## John L. Adams

*v.*

## Thomas Brenan *et al.*

*Opinion filed December 21, 1898.*

1. Schools—*board of education holds school fund as trustee for tax-payers.* For the purpose of maintaining public schools and school buildings, as the agent of the State, the board of education holds the school fund as trustee for the tax-payers, who are in equity the owners thereof and entitled to have it properly applied.

2. Same—*tax-payer may maintain bill to enjoin misuse of school fund by board of education.* A tax-payer may maintain a bill in equity to enjoin a board of education from appropriating the school fund to a purpose not warranted by law.

3. Same—*board of education cannot bind itself to give only union men employment.* A board of education has no power to agree with the representatives of labor organizations to insert in all its contracts for work upon school buildings a provision that none but union men should be employed in such work or placed upon its pay-rolls.

4. Same—*a board of education has no discretion to make contracts restricting competition.* That a board of education might have been of the opinion its action was for the public benefit affords no justification for limiting competition among bidders upon school building contracts, by requiring them to employ only union men in the work.

5. Contracts—*stipulation in public contract for employment of union men only is illegal.* A provision in a contract for a public school building which requires the employment of union men only, creates a monopoly in their favor and restricts competition by preventing contractors from employing any but union men, excluding all others engaged in the same kind of work.

6. Injunction—*that contractor and excluded laborers do not complain does not affect tax-payer's right.* A tax-payer may enjoin the expenditure of a school fund under a provision of a contract for a public school building requiring the employment of union men only, although neither the contractor nor excluded laborers complain.

7. Same—*effect of failure of bill to show it was filed before work was begun.* The failure of a bill to enjoin the expenditure of public funds, to show that it was filed before work was begun under the contract, does not affect the complaining tax-payer's right to relief, where the contract under which the expenditure is attempted is against public law, which the contractor is bound to know.

Appeal from the Superior Court of Cook county; the Hon. Farlin Q. Ball, Judge, presiding.

PADDOCK, WRIGHT & BILLINGS, for appellant:

Municipal corporations are trustees in respect to the functions which they exercise. In a private corporation the *cestui que trust* is the stockholder; so in a municipal corporation the *cestui que trust* is the tax-payer. Dillon on Mun. Corp. secs. 914-919; High on Injunctions, 1236-1238; Cooley on Taxation, (2d ed.) 764; *Hewitt* v. *Normal School*, 94 Ill. 528; *Sherlock* v. *Winnetka*, 59 id. 398; *Stevens* v. *St. Mary's Training School*, 144 id. 336.

The board of education of the city of Chicago is distinctly a *quasi* public corporation. It is a trustee of property and powers belonging to the tax-payers of the city of Chicago, and may be enjoined at the instance of a tax-payer whenever it becomes necessary to prevent it from betraying its trust by making unauthorized appropriations of the corporate funds or misapplying the moneys of the corporation. *Crampton* v. *Zabriskie*, 101 U. S. 601; *Colton* v. *Hanchett*, 13 Ill. 615; *Perry County* v. *Kinnear*, 42 id. 160; *Sherlock* v. *Winnetka*, 59 id. 398; 68 id. 530; *Hewitt* v. *Normal School*, 94 id. 528; *Milhau* v. *Sharp*, 15 Barb. 193; *Beauchamp* v. *Kankakee County*, 45 Ill. 276; *Chestnutwood* v. *Hood*, 68 id. 132; *Springfield* v. *Edwards*, 84 id. 626; *Wright* v. *Bishop*, 88 id. 302; *Board of Education* v. *Arnold*, 112 id. 11; *Stevens* v. *St. Mary's Training School*, 144 id. 336.

The contract here in question is illegal, in that it discriminates against a body of citizens and confers special privileges upon a class or group less than all, and being so illegal, the entire sum agreed to be paid, if so paid,. would be illegally paid. *Frorer* v. *People*, 141 Ill. 171; *Millett* v. *People*, 117 id. 294; *Braceville Coal Co.* v. *People*, 147 id. 66; *Ramsey* v. *People*, 142 id. 380; *Ritchie* v. *People*, 155 id. 98; *Eden* v. *People*, 161 id. 296; Cooley's Const. Lim. (1st ed.) 391-393; *State* v. *Goodwill*, 33 W. Va. 179; *State* v. *Coal Co.* 33 id. 188; *State* v. *Julow*, 31 S. W. Rep. 781; *State* v. *Dyer*, 67 Vt. 690; *Curren* v. *Galen*, 152 N. Y. 33.

A stipulation, agreement or provision that none but union labor be employed, etc., is not in the nature of

specification. 22 Am. & Eng. Ency. of Law, 907; Lloyd's Law of Building, (2d ed.) 54.

Public contracts which tend to create a monopoly or to restrict competition are void. *Fishburn* v. *Chicago,* 171 Ill. 338.

TENNEY, MCCONNELL, COFFEEN & HARDING, and DANIEL J. McMAHON, for appellees:

A court of equity cannot interfere, on behalf of a tax-payer, to enjoin a corporation from making a contract, unless such contract is *ultra vires* or fraudulent. Dillon on Mun. Corp. sec. 906, *et seq.*

Under any circumstances, a bill to enjoin the performance of a contract should show affirmatively that no expense has been incurred by the contractor in the performance of it. The bill in this case lacks such averments. It may be that the work was entirely performed, and that there was nothing left to be done except the payment of the money, at the time the bill was filed.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

Appellant, a tax-payer of the city of Chicago, suing on behalf of himself and the other tax-payers, filed his bill in this cause March 14, 1898, in the superior court of Cook county, against the board of education of said city of Chicago, John A. Knisely, a contractor, and said city of Chicago, asking to have a contract between the board of education and Knisely declared illegal, and to restrain the defendants from carrying out the same or expending money thereunder.

The facts stated in the bill are substantially as follows: In September, 1897, the board of education entered into an agreement with an organization in said city known as the "Building Trades Council," representing labor or trades unions in said city, by which the board of education on its part agreed to insert in all contracts for work

upon school buildings a provision that none but union labor should be employed in such work and that none but union workmen should be employed and placed upon the pay-rolls of said board. The Bryant School, one of the school houses under the care of the board, being in need of repair, the board advertised February 5, 1898, for bids for the construction of a roof on an addition thereto, which advertisement contained the following:

"*Notice*—None but union labor shall be employed on any part of the work where said work is classified under any existing union.                   By order of Board of Education."

On February 11, 1898, the defendant John A. Knisely, among other contractors, submitted his bid for the roof, in which he agreed to furnish material and do the work in strict accordance with the plans and specifications prepared and on file in the office of said board for the sum of $2090, and to be bound by said condition, and further stated: "I, the undersigned, will do the above work for the sum of $1900, provided all conditions as to the employment of none but union labor are stricken from the specifications and contract made accordingly. This last bid is made, not necessarily because the undersigned expects to employ non-union labor for this work, but because it is worth to him the difference to have the liberty to do so should circumstances make it necessary or advisable." On February 23, 1898, the board accepted Knisely's higher bid of $2090 with the restriction, and awarded to him the contract. About March 1, 1898, the board and Knisely entered into a contract in accordance with the bid so accepted, containing a provision that none but union labor should be employed by him. The work required by the contract was classified under the existing trades unions in the city of Chicago, and the term "union labor" included only the labor of such mechanics and workmen as were members of voluntary associations in the city of Chicago commonly known as

labor or trades unions, which did not embrace all the citizens, tax-payers, mechanics or workmen in said city, a large proportion of whom do not belong to any trade or labor union.

Upon the filing of the bill application was made for a preliminary injunction, which was heard upon the bill and affidavits and the record of proceedings of the board of education, which sustained the charges of the bill. The application was denied, and the court dismissed the bill for want of equity appearing upon its face.

The board of education of the city of Chicago is a public corporation, created by legislative authority·as an agent of the State for the purpose of maintaining public schools and school buildings within that subdivision of the State. For the purposes of that function it receives from the tax-payers and holds as a trustee the school fund, and is bound to administer it for the benefit of the beneficiaries of the trust. The tax-payers are in equity the owners of the fund, and the board can only hold and apply it to legitimate purposes of the trust. The law is established, beyond doubt or controversy, that a bill to enjoin public officers so situated from misappropriating the fund in their charge is a proper remedy for a tax-payer. Courts of chancery will interfere to restrain such authorities from a misuse of the fund entrusted to them or its appropriation to a purpose not warranted by law. *Colton* v. *Hanchett,* 13 Ill. 615; *Perry* v. *Kinnear,* 42 id. 160; *Beauchamp* v. *Kankakee County,* 45 id. 274; *Jackson* v. *Norris,* 72 id. 364; *Livingston County* v. *Weider,* 64 id. 427; *Chestnut-wood* v. *Hood,* 68 id. 132; *Wright* v. *Bishop,* 88 id. 302; *Board of Education* v. *Arnold,* 112 id. 11; *Stevens* v. *St. Mary's Training School,* 144 id. 336.

The bill charges that this board has negotiated a sort of treaty with the Building Trades Council, a private organization representing particular laborers or associations of workmen and constituted for the furtherance of the interests of such laborers and workmen, the effect of

which is to give those persons a monopoly of the work to be done for the public under the charge of the board. The record of the board shows an application by a committee of this Building Trades Council for the adoption of the provision in question. The provision was adopted by resolution of the board, with an agreement on the part of the Building Trades Council to call off a strike, and a reason given in the application to the board for the adoption of the clause was, that it would do away with strikes upon school buildings and thereby save the board much annoyance and delay. Ordinarily the restraining power of a court of equity should be directed against the enforcement, rather than the passage, of unauthorized orders and resolutions, and if this resolution was unlawful it is a proper time to enjoin its enforcement when a contract like the one in question is made under it. (*Stevens* v. *St. Mary's Training School, supra.*) In the execution of this agreement and resolution the board of education assumed to let the contract to the defendant Knisely with the stipulation that none but members of the associations in question should be employed, and at an expense of $190 more than would be required to fulfill the same contract without the restriction. The two bids were made by the same contractor, with the same responsibility in either instance, and who was prepared to perform the contract as fully and well under one stipulation as the other. The award to him was therefore not made in view of any question of responsibility as a bidder, but solely to carry out the agreement.

It is plain that the rule adopted by the board and included in this contract is a discrimination between different classes of citizens, and of such a nature as to restrict competition and to increase the cost of work. It is unquestionable that if the legislature should enact a statute containing the same provision as this contract in regard to any work to be done for boards of education, or if they should by a statute undertake to require this

board, as the agency of the State in the management of school affairs in the city of Chicago, to adopt such a rule or insert such a clause in its contracts, or should undertake to authorize it to do so, the provision would be absolutely null and void as in conflict with the constitution of the State. If such a restriction were sought to be enforced by any law of the State it would constitute an infringement upon the constitutional rights of citizens, so that the State in its sovereign capacity, through its legislature, could not enact such a provision. (*Millett* v. *People,* 117 Ill. 294; *Frorer* v. *People,* 141 id. 171; *Braceville Coal Co.* v. *People,* 147 id. 66; *Ramsey* v. *People,* 142 id. 380; *Ritchie* v. *People,* 155 id. 98; *People* v. *Chicago Live Stock Exchange,* 170 id. 556.) There is no more reason or justification for such a contract as this than there would be for a provision that no one should be employed except members of some particular party or church. In any such case it might be said that the board entertained a *bona fide* opinion that the members of some political party were more intelligent and better capable of performing the work, so that better results would be attained; or that the members of a church, on account of their higher standard of morality, would more faithfully and conscientiously carry out the contract. The fact that the board may have been of the opinion that its action was for the benefit of the public cannot afford a justification for limiting competition in bidders and requiring them to abandon the right to contract with whomsoever they may choose for the performance of the work.

There seems, however, to be a claim that the board of education, although it could not be lawfully required or authorized to make such a contract, may have some sort of discretion to do so, and the only question in the case on the subject of the validity of such contract is, whether the board possesses power beyond that of the legislature, in which is vested the entire legislative authority of the State. Upon what theory it could be claimed

that this board of education, which exercises merely the function of the State in maintaining public schools within a limited portion of the State, can possess either power or discretion which the State in its sovereign capacity could not confer upon it we are unable to imagine. No argument is made which would justify such a conclusion. There can be no greater power of the board to act of its own motion than by virtue of positive law. The results, in either case, are equally in conflict with the organic law, and such legislation, contract or action, whatever form it may take, is void. Nor can the fact, if it be a fact, that an individual might make such a bargain authorize these public officers exercising a public trust to do so. The individual may, if he chooses, give away his money, but the public officer, acting as a trustee, has no such liberty, and no right to surrender to a committee or any one else the rights of those for whom he acts.

The complainant, as a tax-payer, is a proper party to question the action of the board. The contract containing the illegal provision was entered into voluntarily by the contractor, in pursuance of his alternative propositions submitted to the board. There is injury to the tax-payer on account of the unlawful agreement, and he is not deprived of a remedy for his wrong because neither the contractor nor any excluded laborer has questioned the contract.

There is another ground upon which complainant has an undoubted right to maintain the bill, and that is, that the contract tends to create a monopoly and to restrict competition in bidding for work. The board of education may stipulate for the quality of material to be furnished and the degree of skill required in workmanship, but a provision that the work shall only be done by certain persons or classes of persons, members of certain societies, necessarily creates a monopoly in their favor. The effect of the provision is to limit competition by preventing contractors from employing any except certain per-

sons and by excluding therefrom all others engaged in the same work, and such a provision is illegal and void. A tax-payer may resist an attempted appropriation of his money in execution of such a contract. *Fishburn* v. *City of Chicago*, 171 Ill. 338.

It is suggested that there can be no relief because the bill fails to show that the contractor, Knisely, did not enter upon the work under his contract before the bill was filed. The illegality of the contract results from public law, which he was bound to know, and the provision was wholly outside of the powers of the board of education. Under no circumstances could he be entitled to the $190 which was the direct result of such illegality. The bid furnishes, in this case, the exact measure of the injury to the tax-payers resulting from the unlawful restriction, and the question whether he had entered upon the performance of the contract could not, in any event, go further than to the question of the extent of relief to be granted.

No question concerning the merits of labor or trades unions is in any way involved in this case. The right of organization for mutual benefit in all lawful ways is not denied. The question is, whether the board of education has a right to enter into a combination with such an organization for the expenditure of the tax-payers' money for the benefit of members of the organization, and to exclude any portion of the citizens following lawful trades and occupations from the right to labor. It has no such right.

The decree of the court dismissing the bill is wrong, and it is reversed and the cause remanded for proceedings in conformity with what is here said.

*Reversed and remanded.*