THE PEOPLE *ex rel.* William M. Webster, Appellant, *vs.* THE CITY OF CHICAGO *et al.* Appellees.

*Opinion filed April 20, 1916.*

1. MUNICIPAL CORPORATIONS—*it is primarily the duty of a property owner to remove garbage, ashes and waste.* It is primarily the duty of the owner of property in a city to remove, at his own expense, garbage, ashes and waste.

2. APPEALS AND ERRORS—*when validity of ordinance is not involved on appeal.* Where an ordinance requires the owners of flat-buildings to remove ashes therefrom at their own expense and there is a proviso that the ordinance shall not apply to flat-buildings of five apartments or less, the validity of such ordinance is not involved on appeal in a *mandamus* proceeding by the owner of a six-apartment flat-building to compel the city to remove at its expense the ashes from such building, even though the city is removing ashes from the buildings excepted by the proviso of the ordinance with a fund raised by general taxation.

APPEAL from the Circuit Court of Cook county; the Hon. JOHN H. FORNOFF, Judge, presiding.

THOMAS S. McCLELLAND, for appellant.

RICHARD S. FOLSOM, Corporation Counsel, (LEON HORNSTEIN, of counsel,) for appellees.

Mr. CHIEF JUSTICE FARMER delivered the opinion of the court:

The relator, William M. Webster, as owner of a steam-heated six-apartment building located in the twenty-fifth ward of the city of Chicago, filed his petition for *mandamus* against the city, its mayor, commissioner of public works and superintendent of streets and alleys, to compel the city, through its administrative officers, to remove ashes and other waste material from said property without cost to him. A general demurrer was filed to the petition and was sustained by the court. The petition was dismissed by the court and judgment entered against the relator for costs. The case has been appealed to this court, accompanied by a certificate of the trial judge that the validity of an ordinance of said city is involved and that in his opinion the public interest requires that this court should determine the validity of said ordinance.

The petition sets forth, in substance, that the said officers have the sole and exclusive charge, control and management of the removal of ashes, waste and garbage from residential buildings in said city and providing a place of deposit for the same at the cost of the city; that said officers are charged with the duty of removing ashes, garbage, etc., from all residential buildings in the city of Chicago without discrimination as to size or character; that relator is, and since May 1, 1907, has been, the owner and in possession of a residential building consisting of six apartments or independent dwelling places or homes for six independent families, numbered and known as 4322 and 4326 Sheridan road, in the twenty-fifth ward of Chicago; that he has paid all taxes and assessments on said property since he has owned it, including taxes for the removal of ashes and waste; that said building is heated by steam produced by the use of coal, and by hot water produced by burning coal in a hot water heater, whereby ashes are produced in such quantities as to make it necessary for their removal from

time to time; that he has provided necessary vessels as receptacles for the ashes so made, and has maintained said receptacles, as provided by section 995 of the ordinances of said city, for the deposit of said ashes and waste; that said city since September 1, 1901, has been removing all ashes from all steam-heated residences and apartment buildings containing less than five flats or apartments each, and from all stove-heated buildings without regard to the number of flats or apartments in any one building or amount or quantity of ashes produced in and about such stove-heated buildings, and at public cost and expense, out of the general taxes levied and collected upon and from all property of every kind and character, including said property of relator; that said city, through its city council, appropriated $70,000 for dumps or places for ashes and $976,015 for their removal for the fiscal year 1915, including the sum of $29,770 for the twenty-fifth ward for the removal of ashes therefrom; that said officers are now, and have been, removing ashes from all stove-heated buildings in said twenty-fifth ward and from all steam-heated buildings containing less than five flats, and from all stove-heated buildings, including flats and private residences, without regard to the number of residences in each stove-heated building or the quantity of ashes produced therein, but that said city and its said officers unlawfully and fraudulently have failed and refused, and still do unlawfully and fraudulently fail and refuse, to remove ashes from all steam-heated buildings in said city, including relator's, containing five or more flats each, to the great damage, wrong and injury of relator; that on January 2, 1915, he served a notice and demand on respondents, and each of them, to move the ashes from relator's building at public cost and expense, without cost to the relator; that the said defendants pretend to screen and shield themselves from the strict performance of their legal duties under the pretense that there are not available funds sufficient to remove ashes from residential property in said city except

from private steam and stove-heated residences and steam-heated buildings containing less than five flats each and except all stove-heated flat-buildings, and further seek to screen and excuse themselves from such duty because the ordinances of said city relating to the removal of ashes and waste absolve and prevent them from removing ashes and waste as aforesaid; that such pretenses and excuses are mere subterfuges, and that said appropriations are sufficient to pay for the removal of all ashes from all steam-heated flat-buildings as well, if the removal of ashes, etc., be economically done, "but waiving this, it is the legal duty of respondents to remove all ashes and waste alike in said city from residential buildings, including relator's building." It is then alleged in said petition that the ordinances so invoked by respondents to relieve them from their said duty are sections 992, 995, 996, 997, 998, 999 and 1000 of the ordinances of said city, copies of which are made exhibits to said petition. The last clause of section 1000 is alleged to be void, as an unlawful and unreasonable discrimination against owners of steam-heated flats containing five or more apartments.

Section 995 provides as follows:

"Sec. 995. *Vessels for garbage, ashes, etc.*) It shall be the duty of every owner, or his agent or occupant, of any house, building, flat, apartment or tenement in the city of Chicago where persons reside, board or lodge or where animal or vegetable food is prepared or served, and which is a private residence, to provide for such house, building, flat, apartment or tenement, and at all times to maintain in good order and repair, a separate vessel or vessels for garbage and a separate vessel or vessels for ashes and miscellaneous waste, of the material, construction and capacity prescribed in section 996 of this article and in number proportioned as follows: For every house or building other than flat, apartment or tenement building, one vessel for garbage and one vessel for ashes and miscellaneous waste."

Section 992 merely defines the terms "garbage," "ashes" and "miscellaneous waste." Section 996 prescribes the dimensions and character of the receptacles to be used for garbage, ashes and miscellaneous waste referred to in section 995. Section 997 simply provides where the receptacles are to be placed and kept upon the premises where used. Section 998 restricts the receptacles to the particular use for which provided. Section 999 provides that no person other than a scavenger licensed or employed by the city or the owner or tenant shall remove the contents, and that no person other than the owner or occupant shall use the receptacles for the deposit of garbage, ashes, etc. The material parts of section 1000 provide that it shall be the duty of every person, firm or corporation occupying, operating or controlling any building or portion thereof in the city of Chicago which is heated by steam, hot air or hot water, or in or about which combustibles are used or ashes produced, to keep in or about such building all ashes, cinders and other waste arising from combustion and produced therein, and to remove or cause to be removed the same from said premises at his, her or its own expense, at such times and in such manner as the commissioner of public works may direct: *"Provided,* this section shall not apply to any case where a vessel or vessels for ashes are required by the provisions of section 995 of this article, nor apply to any building containing less than five flats."

The right of appellant to the writ of *mandamus* is based upon the claim that the city of Chicago had for the fiscal year 1915 appropriated $70,000 for dumps or places of deposit for ashes, garbage and refuse and $976,015 for their removal for that fiscal year, and that since September 1, 1901, the city had been removing ashes, garbage, cinders and waste from all steam-heated buildings within the city containing less than five apartments each, and from all stove-heated buildings without regard to the number of flats or apartments in any one building, at the cost and expense

of the city, out of the tax levied and collected upon and from all the property in the city. It is alleged appellees are charged with the duty of disbursing the public funds of the city for the benefit of all tax-payers alike, and are legally bound to remove the ashes from appellant's premises and pay the expense out of the appropriation. It is not claimed the city is not removing the garbage from appellant's premises the same as from other classes of buildings. The only complaint is as to the failure to remove ashes. It is not contended there is any ordinance requiring the city, its officers or employees to remove the ashes from the appellant's premises, but it is conceded that "there is no positive law, ordinance or enactment requiring appellees to remove any ashes." The ordinances do not expressly require appellees to remove ashes from the buildings of the class the petition alleges they are removing them from. The first clause of section 1000 makes it the duty of the owner of buildings heated by steam, hot air or hot water to remove or cause to be removed at the owner's expense all ashes produced, at such time and in such manner as the commissioner of public works may direct. By a proviso to said section that section was not to apply to any case where vessels for ashes were required by section 995 nor to any building containing less than five flats. The petition alleges the city authorities construe the ordinances to require the removal, at public expense, of ashes from all premises exempted by the proviso to section 1000, but that as to buildings not exempted the owners are required to remove the ashes at their own expense. The case, in substance and effect, as made by the petition is, that because the city has made an appropriation and levied a tax for the expense of the removal of garbage and ashes from buildings and is expending the appropriation in removing the garbage from all buildings but the ashes from only certain classes of buildings, the city is violating a legal duty it owes the owners of buildings from which it

refuses to remove the ashes at public expense, and which it may be compelled to perform by writ of *mandamus.*

We are unable to see how the determination of appellant's right to the writ involves the validity of an ordinance. The ordinances do not purport to require appellees to remove ashes from appellant's building, and whether the action of the city in levying and collecting a tax to pay the expense of the removal of ashes from buildings imposes a duty upon the city to expend the tax in the removal of ashes from all the buildings, the performance of which may be compelled by mandamus, does not depend upon whether the ordinances or the proviso to section 1000 is valid or invalid. If the ordinances were held valid as an entirety, we could not extend their operation or effect beyond the intention of the legislative body which enacted them, and whether appellant is entitled to the relief sought on the ground it is prayed, would not be affected by a decision that the ordinances are invalid. It is primarily the duty of the property owner, and one which he may be compelled to perform, to at his own expense remove from his premises garbage, ashes and waste produced thereon. (*California Reduction Co.* v. *Sanitary Reduction Works,* 199 U. S. 306.) Whether the city of Chicago has by its acts in levying and collecting a tax to remove ashes and in expending such tax in removing them from some premises but not from all, imposed upon it the legal duty and obligation to remove ashes from all residence property in the city, is not dependent upon or affected by the validity or invalidity of the ordinances set out in the petition.

The validity of the ordinances not being necessary to the decision of the case this court is without jurisdiction to entertain the appeal, and the cause will be transferred, with all the records and files in the case, to the Appellate Court for the First District.

*Cause transferred.*