(No. 15891.—Decree affirmed.)

The Consumers Company, Appellant, *vs.* The City of Chicago *et al.* Appellees.

*Opinion filed October 28, 1924.*

1. Municipal corporations—*what powers are possessed and may be exercised by municipal corporation.* A municipal corporation possesses and can exercise only those powers which are granted in express words, which are necessarily implied in or incident to the powers expressly granted, and such as are essential,—not merely convenient but indispensable,—to the accomplishment of the declared objects and purposes of the corporation.

2. Same—*doubt must be resolved against exercise of power by municipality.* Any fair or reasonable doubt concerning the existence of a power in a municipality must be resolved against the existence of the power.

3. Same—*power of a city may be derived from one or more clauses of section 1 of article 5 of the Cities and Villages act.* A municipality may derive its powers with reference to a certain subject from one clause of section 1 of article 5 of the Cities and Villages act or from two or more of its clauses.

4. Same—*extent of police power of State.* The police power of the State extends to the protection of the lives, limbs, health, comfort and quiet of all persons and of all property within the State.

5. Same—*clause 66 of section 1 of article 5 of Cities and Villages act does not delegate all police power to city.* Clause 66 of section 1 of article 5 of the Cities and Villages act is not a delegation to cities and villages of all the police power of the State, but it gives them the power to pass and enforce all police ordinances which may be necessary with reference to the subjects and occupations which by other specific clauses of the same section municipalities are given express authority to regulate and control.

6. Same—*when ordinance is valid exercise of police power.* To sustain an ordinance as an exercise of the police power it must tend in some degree, within the authority of the municipality, toward the prevention of offenses or the preservation of the public health, morals, safety or welfare and be actually intended for such purpose, and if the ordinance has no reasonable relation to any of the subjects over which municipalities are given the authority of regulation and control it is invalid, as it is an unauthorized invasion of private rights.

7. SAME—*city may remove or regulate disposition of garbage.* A municipal corporation, under its police powers given in clauses 66 and 78 of section 1 of article 5 of the Cities and Villages act, has the right to regulate the collection, removal and disposition of garbage and other noxious and unwholesome substances accumulating within its limits, and it may remove the same at its own expense as a proper function of the city for preservation of public health and suppression of disease.

8. SAME—*acts of 1897 and 1915 are not limitations on power of cities of either class to dispose of garbage.* The act of March 30, 1897, (Smith's Stat. 1923, chap. 24, pars. 643, 644,) authorizing cities of more than 100,000 to make contracts for the disposition of garbage for more than one year, and the act of June 25, 1915, (Smith's Stat. 1923, chap. 24, par. 645,) authorizing cities of less than 100,000 to maintain garbage disposal systems or plants and to levy a tax therefor, are not limitations on the power of cities of either class to dispose of garbage under their police powers prior to the passage of the acts, and said acts do not prescribe the sole means of disposition of garbage.

9. SAME—*city may acquire land for disposition of garbage.* An ordinance of the city of Chicago authorizing it to purchase a tract of land as a place for the disposal of garbage is not invalid, as the power to remove and dispose of garbage, refuse and other waste includes the power to create and use the necessary means effectually to accomplish the purpose, and the city is expressly empowered to acquire and hold real and personal property for corporate purposes.

10. INJUNCTION—*tax-payer may seek to enjoin alleged unlawful disbursement of public money.* A tax-payer, individual or corporation, has the right to seek to enjoin what is believed to be an illegal disbursement of public money.

APPEAL from the Superior Court of Cook county; the Hon. CHARLES M. FOELL, Judge, presiding.

WINSTON, STRAWN & SHAW, and McKINLEY & SCHMAUCH, (W. W. SCHMAUCH, and JOHN D. BLACK, of counsel,) for appellant.

FRANCIS X. BUSCH, Corporation Counsel, (LEON HORNSTEIN, and RUTH C. NELSON, of counsel,) for appellees.

Mr. JUSTICE DEYOUNG delivered the opinion of the court:

The appellant, the Consumers Company, an Illinois corporation, as an owner of real estate and tax-payer in the city of Chicago, filed its bill in the superior court of Cook county against the city of Chicago, Albert A. Sprague, its commissioner of public works, Martin J. O'Brien, its comptroller, and certain owners, to restrain the city and its officers from consummating the purchase of a tract of land and disbursing public funds therefor. The bill alleges that the land sought by the city is bounded by Huron street, Campbell avenue, Grand avenue and Rockwell street; that for thirty years it has been used continuously for the quarrying of stone and the production of crushed limestone and other building and road materials; that a large cavity occupying practically its entire area to a depth of approximately 265 feet has resulted and that only a slight portion of the surface remains in its natural state; that on September 19, 1921, the city council passed an ordinance which authorized and directed the comptroller to negotiate the purchase of the land for $150,000, declared the property to be "useful, advantageous and desirable to the city of Chicago for a site for dumps, waste disposal stations and incinerators," and provided that if no agreement with the owners was made, condemnation proceedings should be instituted to acquire the property for the purposes mentioned; that the negotiations failed and the city filed its petition to condemn; that on June 13, 1923, another ordinance was passed identical with the first, except that the price which the comptroller was authorized to pay was raised to $300,000; that negotiations were renewed but proved unavailing; that on June 28, 1923, the city filed its amended petition to condemn, which, after stating the purposes for which the land was sought, as declared in the ordinances, alleged that its acquisition "for said purposes is necessary properly to pro-

tect the health of the community and suppress disease in the locality and to provide for the cleansing of the streets, avenues and alleys of said city;" that the city has resumed negotiations to acquire the land by private purchase and is about to expand $340,000 therefor; that such contemplated expenditure is illegal, and unless restrained will deplete the city's public funds and result in the increase of complainant's tax burden. The defendants interposed separate general demurrers to the bill, which were sustained. The complainant elected to stand by its bill and it was dismissed for want of equity. The chancellor found that the validity of a municipal ordinance was involved, and certified that in his opinion the public interest required that an appeal should be taken directly to this court.

Appellant contends (1) that the contemplated purchase by the city of Chicago of property as a site for dumps, waste disposal stations and incinerators, and the disbursement of public funds therefor, are illegal; (2) that cities having a population in excess of 100,000 are limited by the act of March 30, 1897, to a disposition of their garbage by contract, and that under the rule *expressio unius est exclusio alterius* no other mode is open to the city of Chicago; (3) that power to establish and maintain systems or plants for the collection and disposition of garbage is limited by the act of June 25, 1915, to cities with a population of less than 100,000, and that the grant of that power to such cities implies its denial to all others; and (4) that the acts of March 30, 1897, and June 25, 1915, are *in pari materia,* and construed together show a clear legislative intent to provide one method of garbage disposal for cities with a population of less than 100,000 and another method for cities of greater population.

A municipal corporation possesses and can exercise the following powers, and no others: First, those granted in express words; second, those necessarily implied in or incident to the powers expressly granted; and third, those

essential to the accomplishment of the declared objects and purposes of the corporation,—not simply convenient but indispensable. (*Huesing* v. *City of Rock Island,* 128 Ill. 465; 1 Dillon on Mun. Corp.—5th ed.—sec. 237.) Any fair or reasonable doubt concerning the existence of the power must be resolved against the municipality and the power denied. (19 R. C. L. 769; *City of Chicago* v. *M. & M. Hotel Co.* 248 Ill. 264; *City of Chicago* v. *Pettibone,* 267 id. 573.) Among the express powers conferred by section 1 of article 5 of the Cities and Villages act, (Smith's Stat. 1923, pp. 222, 225,) and upon which appellees rely, are:

"*Twelfth*—To provide for the cleansing of the same." [Streets, alleys, avenues, sidewalks, wharves, parks and public grounds.]

"*Fifteenth*—To regulate and prevent the throwing or depositing of ashes, offal, dirt, garbage or any offensive matter in, and to prevent injury to, any street, avenue, alley or public ground."

"*Sixty-sixth*—To * * * pass and enforce all necessary police ordinances."

"*Seventy-fifth*—To declare what shall be a nuisance, and to abate the same."

"*Seventy-eighth*—To do all acts, make all regulations, which may be necessary or expedient for the promotion of health or the suppression of disease."

"*One hundredth*—To pass all ordinances, rules and make all regulations, proper or necessary, to carry into effect the powers granted."

A municipality may derive its powers with reference to a certain subject from one sub-section of section 1 of article 5 of the Cities and Villages act or from two or more of its sub-sections. (*City of Chicago* v. *Green Mill Gardens,* 305 Ill. 87.) The police power extends to the protection of the lives, limbs, health, comfort and quiet of all persons and the protection of all property within the State.

(*City of Chicago* v. *Green Mill Gardens, supra.*)     Sub-section 66 is not a delegation to cities and villages of all the police power of the State, but it gives them the power to pass and enforce all police ordinances which may be necessary with reference to the subjects and occupations which by other specific sub-sections of the same section these municipalities are given express authority to regulate and control.     (*Moy* v. *City of Chicago,* 309 Ill. 242.)     To sustain an ordinance as an exercise of the police power it must tend in some degree, within the authority of the municipality, toward the prevention of offenses or the preservation of the public health, morals, safety or welfare.     It must be apparent that some such end or purpose is actually intended.     (*People* v. *Weiner,* 271 Ill. 74.)     If the ordinance clearly has no reasonable relation to any of the subjects or occupations over which municipalities are given the authority of regulation and control it is invalid, because it is, in that event, an unauthorized invasion of private rights.     (*Moy* v. *City of Chicago, supra.*)     The right of a municipal corporation, under its police powers, to regulate the collection, removal and disposition of garbage and other noxious and unwholesome substances accumulating within its limits, as a sanitary measure for the promotion of the public health, has been sustained.     (2 Dillon on Mun. Corp.—5th ed.—sec. 678; 19 R. C. L. 971; *City of Grand Rapids* v. *DeVries,* 123 Mich. 570; *Kilvington* v. *City of Superior,* 83 Wis. 222; *California Reduction Co.* v. *Sanitary Reduction Works,* 199 U. S. 306; *Iler* v. *Ross,* 64 Neb. 710; *Walker* v. *Jameson,* 140 Ind. 591.)     In the exercise of this power, municipalities, through their own agents, have undertaken the removal of waste and garbage from the premises of their inhabitants and prohibited all private parties from engaging in the same service.     (*Smith* v. *Spokane,* 55 Wash. 219.)     They have also granted to a single individual or corporation, by contract, the exclusive privilege of removing such matter from the city limits.

Ordinances requiring all garbage and other refuse to be delivered at a specified crematory or reduction plant, there to be cremated or destroyed at the expense of the person conveying the same, are valid even though some of the substances thus destroyed may have had elements of value. (*California Reduction Co.* v. *Sanitary Reduction Works, supra.*) While it is primarily the duty of the owner or occupant of property in a city to remove at his own expense the garbage, ashes and waste originating on his premises, yet the city may do so. (*People* v. *City of Chicago, 272 Ill.* 451.) It is a proper function, which the city may perform for the preservation of the public health so long as it does not interfere unreasonably with individual rights. (*Landberg* v. *City of Chicago, 237 Ill.* 112.) Garbage, refuse and other waste decay and putrefy and unless promptly removed become a menace to the public health. Their removal and disposition result in the suppression of disease, and are authorized by sub-sections 66 and 78 of section 1 of article 5 of the Cities and Villages act.

But appellant contends that the General Assembly by the acts of March 30, 1897, and June 25, 1915, has, for purposes of garbage disposition, divided all the municipalities of the State into two classes and provided a different method for each, and that no municipality has the right or power to ignore the method prescribed for it. The act of March 30, 1897, authorizes any city having a population in excess of 100,000 to make contracts relating to the collection and final disposition of garbage and ashes for more than one year and not exceeding five years, and when made requires the city council to include in the annual appropriation ordinance of the current fiscal year a sum of money sufficient to pay the amount which by any such contract shall become due and payable during such fiscal year. (Smith's Stat. 1923, chap. 24, pars. 643, 644.) The act of June 25, 1915, empowers cities and villages having a population of less than 100,000 to establish and maintain

systems or plants for the collection and disposal of garbage and to levy an annual tax therefor, not exceeding one and one-third mills on each dollar of assessed valuation of property in the municipality, which tax shall be in addition to the taxes authorized for general municipal purposes. (Smith's Stat. 1923, chap. 24, par. 645.)

Prior to the act of March 30, 1897, no obligation could be incurred under any contract for the collection and disposition of garbage until an appropriation had been made for the entire expense. (Cities and Villages act, art. 7, sec. 4.) Cities and villages organized under the general law are required to make their appropriations annually. (Cities and Villages act, art. 7, sec. 2.) The act of March 30, 1897, does not in terms confer upon cities of the class designated, the power to enter into contracts of the character mentioned. It implies that the power to make such contracts for periods not exceeding one year exists. Its purpose, as it expressly declares, is to authorize cities of the requisite population to enter into such contracts for periods not exceeding five years, and to require the appropriation, annually, of such portion, only, of the whole expense as will become due and payable during the current fiscal year.

The body of the act of June 25, 1915, confers power upon cities and villages of less than 100,000 population to establish and maintain garbage systems and to levy a special tax therefor, but no grant of power or authority to establish and maintain such systems is expressed in the title to the act. The title merely authorizes cities and villages of the class designated, "to levy a tax for the purpose of collecting and disposing of garbage." Apart from the question whether the title is broad enough to include the power conferred to establish and maintain garbage systems, there is nothing in the act, either express or by implication, which denies that incorporated cities and villages possessed the power and authority to dispose of garbage prior to the passage of the act.

Do the acts of March 30, 1897, and June 25, 1915, show a clear legislative intent to provide one method of garbage disposal for cities with a population of less than 100,000 and another for cities of greater population? The first act became effective, by an emergency provision, on the day of its passage, and the second went into force on July 1, 1915. More than eighteen years elapsed between the passage of these two enactments. If the power to dispose of garbage was not conferred until these acts became effective, then the city of Chicago possessed no such power until March 30, 1897, and all other cities in the State lacked it until July 1, 1915. Yet garbage disposition necessarily had engaged the attention of the authorities and invoked the exercise of their power in many cities of the State long before the passage of either act. If no such power, in any form whatever, existed before March 30, 1897, it is strange that the General Assembly should confer upon cities of more than 100,000 inhabitants, (which includes only the city of Chicago,) not the power to collect and dispose of garbage,—in that event obviously necessary,—but merely the authority to make contracts relating thereto for more than one year and not exceeding five years. The act of March 30, 1897, assumes the existence of the city's power to make collection and disposition of its garbage. If the act requires the city of Chicago to do so exclusively by contract, as the appellant contends, then no such contract can be made for any term less than one year. Such was not, we believe, the legislative intent. The act is not a limitation upon the power of the city to dispose of its garbage, as the power existed prior to the passage of the act, but the act amplifies that power by enabling the city to exercise it over an extended period in a particular way not theretofore permitted. Likewise it cannot be presumed that all the cities of the State other than Chicago lacked the authority to collect and dispose of their garbage until the passage of the act of June 25, 1915, or that the act pre-

scribed the sole means by which those cities can make disposition of their garbage. The rule *expressio unius est exclusio alterius* should never be followed to the extent of overriding a different intent of the legislature. (*Public Utilities Com.* v. *Monarch Refrigerating Co.* 267 Ill. 528.) The act of June 25, 1915, as its title indicates, authorizes cities and villages within its provisions to levy a tax for the purpose of collecting and disposing of garbage. The authority to levy the additional tax is the object and purpose of the act.

The power to remove and dispose of garbage, refuse and other waste includes the power to create and use the necessary means effectually to accomplish the purpose. (*Dutton* v. *City of Aurora,* 114 Ill. 138; *County of Mercer* v. *Wolff,* 237 id. 74; *City of Chicago* v. *Wisconsin Lime and Cement Co.* 312 id. 520.) Moreover, the city is expressly empowered to acquire and hold real and personal property for corporate purposes. (Smith's Stat. 1923, sec. 10, p. 217.) Hence the ordinance of June 13, 1923, is valid and appellees have the power to acquire land for the purposes therein stated.

Appellant complains, in its reply, of insinuations in appellees' brief which impugn appellant's motives in this litigation. As a tax-payer appellant had the right to seek to enjoin what it believed to be an illegal disbursement of public money. (*Adams* v. *Brenan,* 177 Ill. 194; *Holden* v. *City of Alton,* 179 id. 318; *Fergus* v. *Russel,* 270 id. 304.) The imputations made are unwarranted and serve no useful purpose. This court considers and determines a cause solely upon the record before it.

The decree of the superior court will be affirmed.

*Decree affirmed.*