(No. 32432.—)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, *vs.*
THE CITY OF CHICAGO, Appellee.

*Opinion filed September 17, 1952.*

JOHN S. BOYLE, State's Attorney, of Chicago, (GORDON B. NASH, and VINCENT FLOOD, of counsel,) for appellant.

JOHN J. MORTIMER, Corporation Counsel, of Chicago, (ROBERT J. NOLAN, and PATRICK W. DUNNE, of counsel,) for appellee.

Mr. JUSTICE HERSHEY delivered the opinion of the court:

This case comes here on appeal from the circuit court of Cook County, challenging the constitutionality of section 13 of the Illinois Civil Defense Act of 1951. Ill. Rev. Stat. 1951, chap. 127, par. 281.

The State's Attorney of Cook County brought this *quo warranto* action against the city of Chicago challenging the legality of certain 1952 appropriations and tax levies for the city's civil defense fund. The city answered, admitting the appropriations and levies, declaring them authorized by section 13 of the Illinois Civil Defense Act, and praying the complaint be dismissed. The State's Attorney filed a motion to strike the answer, alleging it failed to state a defense to the complaint and that section 13 of the Illinois Civil Defense Act was unconstitutional and void as (1) violating section 9 of article IX of the State constitution, as not being a tax for a corporate purpose, (2) depriving the taxpayers of Chicago of property without due process of law, (3) violating section 8 of article I of the Federal constitution, which confers on Congress an exclusive power to provide for common defense, declare war, and regulate the land and naval forces, (4) violating section 10 of article I of the Federal constitution forbidding any State to engage in war unless invaded or in imminent danger, and (5) as opposed to article XII of the State constitution, providing for and defining the powers and duties of the Illinois militia. The court overruled the People's motion to strike the city's answer, and when the People elected to stand on their motion, entered judgment for the city. The constitutionality of a statute being involved, the appeal comes directly to this court.

Section 13 of the Illinois Civil Defense Act of 1951 (Ill. Rev. Stat. 1951, chap. 127, par. 281,) provides:

"Each political subdivision may make appropriations for civil defense in the manner approved by law for making appropriations for the ordinary expenses of such political subdivision. Each political subdivision may, however, if it so desires, levy, for purposes only of civil defense, a tax not to exceed $.05 per $100.00 of the full, fair cash value, as equalized or assessed by the Department of Revenue, on all of the taxable property in the political subdivision

for the current year; provided, however, that the amount collectible under such a levy shall in no event exceed $. 25 per capita. Said annual tax shall be in addition to the amount authorized to be levied for general corporate purposes. If any political subdivision has, at the time this Act becomes effective, already adopted an appropriation ordinance for the current fiscal year, such political subdivision may make an additional appropriation for the purposes only of civil defense for such fiscal year. If any political subdivision has, at the time this Act becomes effective, already made its levy, it may make an additional levy, for purposes only of civil defense, not exceeding, however, the rates above fixed. Tax levies made pursuant to this section shall be made in the manner provided in the General Revenue Law."

Section 3 of the act (Ill. Rev. Stat. 1951, chap. 127, par. 271,) defines "political subdivision" as "any county, city, village or incorporated town." The statute quite clearly applies to the city of Chicago.

This proceeding was properly brought as a *quo warranto* action against the city of Chicago, since *quo warranto* lies to oust a municipal corporation from the exercise of assumed powers which are alleged to be unlawful. (*People ex rel. Tuohy* v. *City of Chicago,* 394 Ill. 477.) Here the city is alleged to have exercised powers granted by an unconstitutional statute, and the allegations fit squarely within the confines of a proper *quo warranto* action.

Section 9 of article IX of our State constitution provides:

"The general assembly may vest the corporate authorities of cities, towns and villages with power to make local improvements by special assessment, or by special taxation of contiguous property, or otherwise. For all other corporate purposes, all municipal corporations may be vested with authority to assess and collect taxes; but such taxes shall be uniform in respect to persons and property, within the jurisdiction of the body imposing the same."

Due to this provision, the principle is well established that all taxation by municipal authorities must be for corporate purposes. (*Berman* v. *Board of Education*, 360 Ill. 535.) Long ago, in *Taylor* v. *Thompson*, 42 Ill. 9, this court announced that the words "corporate purpose" should not receive a narrow or rigid construction, and a tax for corporate purpose was defined in comprehensive terms as "a tax to be expended in a manner which shall promote the general prosperity and welfare of the municipality which levies it." These observations have since met with consistent approval. A "corporate purpose" for which taxes may be levied by a municipality, it is now well settled, is such as is germane to the objects of the creation of the municipal corporation or has a legitimate connection with those objects and a manifest relation thereto. (*People ex rel. Toman* v. *Otis*, 376 Ill. 112.) In determining whether a tax levied by a municipality is properly authorized this court has applied the following principles: (1) The legislature may authorize taxation for a public purpose, but a tax imposed for an object in its nature essentially private is void; (2) it is for the legislature, in the first instance, to decide whether the object for which a tax is to be used or raised is a public purpose, but its determination of the question is not conclusive; (3) to justify a court in declaring a tax invalid on the ground that it was not imposed for the benefit of the public, the absence of a public interest in the purpose for which the money is raised by taxation must be so clear and palpable as to be immediately perceptible to every mind. The courts will not interfere with the determination of the legislature by declaring acts invalid because of a difference of opinion as to their wisdom or necessity. If, by any reasonable construction, a use designated by the legislature may be regarded as public, if it is only doubtful whether it is so or not, the courts will not set their judgment against that of the legislature, but the view of the latter must prevail. (*Robbins* v. *Kadyk*, 312

Ill. 290.) For this tax, levied by the city of Chicago, to be valid it must, therefore, be for a corporate purpose— that is, in aid of a public object which is within the purposes for which such government is established.

"Civil Defense" is defined in section 3 of the act (Ill. Rev. Stat. 1951, chap. 127, par. 271,) as "the preparation for and the carrying out of such functions, other than functions for which military forces are primarily responsible, as may be necessary or proper to prevent, minimize, repair, and alleviate injury and damage resulting from disasters caused by enemy attack, enemy sabotage or other hostile action." It is manifest that the purpose for which this appropriation was made and the tax levied was to promote the health, safety and general welfare of all the residents of the city of Chicago by organizing and preparing to combat the dire effects of an attack upon the city by enemies of our nation. It is difficult to see how any activity undertaken by a city could be more in the public interest. In *People ex rel. Illinois Armory Board v. Kelly,* 369 Ill. 280, this court held that the prevention of disorder and the preservation of the public peace is a corporate purpose. There, a donation of land by the city of Chicago for the establishment of an armory was held to be within the corporate purpose. We held it manifest that locating an armory in a municipality may, because of the readiness with which local militia may be employed, save large losses of life and property, as well as corporate expense, which might result from a delay in transporting and quartering troops from another city. The same savings, and more, could be made possible by the establishment of this civil defense fund. Because of organization and preparations for such emergency through the use of civil defense funds, innumerable lives, vast quantities of property, and great public expense may be saved, the civic peace restored and government itself preserved to carry out its ever vital duties. What could be more intimately related to the ob-

jects and purposes for which the municipal government was created? The legislature views this as a public object and within the corporate purpose, and there can exist little doubt but what that view is the correct one. It is obvious that the tax here levied undeniably falls within the broad limits of the "corporate purpose" and does not violate the principles of section 9 of article IX of our State constitution.

Section 13 of the Illinois Civil Defense Act is attacked as a violation of sections 8 and 10 of article I of the Federal constitution. A statute of the State of Minnesota making it unlawful to interfere with or discourage the enlistment of men in the military or naval forces of the United States or of Minnesota was once attacked for the same reason. (*Gilbert* v. *Minnesota,* 254 U.S. 325.) The Supreme Court of the United States stated in its opinion, "It is said in support of the exclusive power in Congress, that Congress alone can under the constitution 'provide for the common defense and general welfare of the United States,' 'declare war,' 'raise and support armies,' 'make rules for the government and regulation of the land and naval forces.' To these affirmative delegations of power to Congress, there is added, it is said, a prohibition to the States to 'engage in war, unless actually invaded, or in such imminent danger as will not admit of delay.' And, 'that the State of Minnesota is not a party to the war now [then] being waged. And if it has not engaged in any war, and until it does so engage, legislation such as a belligerent sovereign might enact, is beyond its province.' * * * Undoubtedly, the United States can declare war and it, not the States, has the power to raise and maintain armies. But there are other considerations. The United States is composed of the States, the States are constituted of the citizens of the United States, who also are citizens of the States, and it is from these citizens that armies are raised and wars waged, and whether to victory and its benefits, or to defeat and its calamities, the States as

well as the United States are intimately concerned. And whether to victory or defeat depends upon their morale, the spirit and determination that animates them—whether it is repellent and adverse or eager and militant; and to maintain it eager and militant against attempts at its debasement in aid of the enemies of the United States, is a service of patriotism; and from the contention that it encroaches upon or usurps any power of Congress, there is an instinctive and immediate revolt. Cold and technical reasoning in its minute consideration may indeed insist on a separation of the sovereignties and resistance in each to any coöperation from the other, but there is opposing demonstration in the fact that this country is one composed of many and must on occasions be animated as one and that the constituted and constituting sovereignties must have power of coöperation against the enemies of all." In a later part of the opinion the court found the statute could be supported as a simple exertion of the police power to preserve the peace of the State. The Federal Supreme Court has thus conclusively determined that a State may exert its police power in such a way as to be of aid to the "war powers" of the republic without constituting a violation of the Federal constitution.

The statute involved in the *Gilbert case* was a direct aid to the war powers of Congress, and was of an active belligerent nature. While the act here involved may incidentally give aid to the Congressional war powers, it is primarily of a nature inclined to prevent, alleviate, and restore the damages resulting from hostile acts. Rather than being of a belligerent nature, it is the exact opposite. Therefore, this act is less likely to offend the Federal war powers than the Minnesota statute. There is no attempt on the part of this State to usurp the powers of Congress. Section 3 of the Civil Defense Act, as set out above, specifically denies that its purpose is to carry out functions for which the military forces are primarily responsible.

Instead of waging war, this act provides a means of preserving tranquility within the State, and protecting the lives, health and property of the civilian population. That it may aid the Federal government in the exercise of its war powers is no usurpation of those powers and is unobjectionable.

The police power extends to the protection of the lives, limbs, health, comfort and quiet of all persons and the protection of all property within the State. (*Consumers Co. v. City of Chicago*, 313 Ill. 408; *Condon v. Village of Forest Park*, 278 Ill. 218.) Moreover, it may be exercised in the interest of public morals, safety and for the promotion of the general welfare. It need not be constitutionally delegated, for it is inherently necessary to the effective conduct and maintenance of government. The authority of the States to enact such laws as they deem reasonably necessary to promote the public health, morals, safety, and general welfare comprehends a wide range of judgment and discretion in determining the matters which are of sufficiently general importance to be subjected to State regulation and administration. Nor do the limitations of the Federal constitution deny to the State the power to establish all regulations reasonably necessary to advance and secure the health, morals, safety, and general welfare of the community. The legislature may not, of course, under the guise of protecting the public interest, interfere with private rights. With the growth and development of the state, the police power necessarily develops, within reasonable bounds, to meet the changing conditions. The power is not circumscribed by precedent arising out of past conditions but is elastic and capable of expansion to keep up with human progress. It extends to the great public needs, that which is sanctioned by usage or held by prevailing morality or strong and preponderant opinion to be greatly and immediately necessary to the public welfare. *City of Aurora v. Burns*, 319 Ill. 84.

It is only in comparatively recent times that the world has experienced such tremendous concentrations of population as we find in our modern cities, or the disastrous and calamitous effect that modern war, with all of its lethal and destructive devices, may inflict upon the civilian population. War is no more a creature of the restricted battlefield, a deadly enterprise conducted according to rules and limitations. Today its destruction may spread throughout the nations, by-passing the soldier and spreading havoc among the all-civilian population. It is, therefore, altogether fitting and proper that the police power extend its protection of the health, safety, and property of the community and its promotion of the general welfare by providing for "civil defense." The experiences of the late world war demontrate well the valuable possibilities of civilian defense efforts. Being an enactment under the police powers of the State, in the public interest, this act in no way violates the limitations of sections 8 and 10 of article I of the Federal constitution.

It is true that such military powers as the State of Illinois possesses cannot, under article XII of the Illinois constitution, be delegated to the city of Chicago. (*City of Chicago* v. *Chicago League Ball Club,* 196 Ill. 54.) The Illinois Civil Defense Act was not enacted under the militia powers of the State, but as an application of the police powers. There is no effort under this statute, by the city of Chicago, to engage in war, or create a militia to put down riots or insurrections. The statute merely authorizes political subdivisions to appropriate and levy taxes to raise a civil defense fund to deal with disasters of war affecting the lives, health and property of the residents of this State. We have already found this statute to be a valid exercise of the police power of the State, and the tax to be for a proper corporate purpose. It is obvious that the State may delegate the police power to properly constituted munici-

palities in the State. *Consumers Co.* v. *City of Chicago,* 313 Ill. 408; *People ex rel. Nelson* v. *Beu,* 403 Ill. 232.

Section 13 of the Illinois Civil Defense Act of 1951 does not violate any constitutional provisions as charged by the appellant, but is a valid exercise of the police power of the State, its effectuation being properly delegated to the municipalities of this State. The appropriation and levy of the city of Chicago is for a proper corporate purpose constituting a legal exercise of a valid power. Consequently, the taxpayers of the city of Chicago are not, by this appropriation and tax levy under this statute, deprived of property without due process of law. Accordingly, the judgment of the circuit court of Cook County is proper and is affirmed.

*Judgment affirmed.*