# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 07-3990

JOHN JUSTICE and MIKE WOODWARD,

*Plaintiffs-Appellants,*

*v.*

TOWN OF CICERO, *et al.,*

*Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 06 C 1108—**Wayne R. Andersen**, *Judge.*

SUBMITTED OCTOBER 23, 2008[*]—DECIDED AUGUST 14, 2009

Before BAUER, WOOD, and TINDER, *Circuit Judges.*

WOOD, *Circuit Judge.*  On February 24, 2006, police officers from the Town of Cicero, Illinois ("the Town"), searched a building owned by John Justice pursuant to

[*] After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. See FED. R. APP. P. 34(a)(2).

a search warrant. A state judge had issued the warrant after finding probable cause that Justice was violating nine municipal ordinances, including one prohibiting the operation of a business without a license and one addressing the improper storage of hazardous chemicals. During the search, the police found six unregistered guns. The Town confiscated the guns, issued six tickets to Justice for possession of an unregistered firearm, and shut down the business for one week.

Justice responded by filing suit against the Town, Dennis Doe and Jerry Jarosz (city officials allegedly in charge of the business license department), and several unidentified Town employees. Michael Woodward, a security guard who worked for Justice, joined the suit. In the Third Amended Complaint ("the Complaint"), Justice challenges the Town's business license ordinance, the Town's ordinance requiring registration of firearms, and the probable cause for the search of his business. Justice also tacks on an allegation that the Town's water department is violating federal and state antitrust law by requiring a separate water meter for his sprinkler system and by charging a minimum fee and imposing a 33% late fee. After methodically explaining the problems with each of Justice's allegations, the district court dismissed the entire complaint for failure to state a claim under FED. R. CIV. P. 12(b)(6). We agree with the district court and therefore affirm the judgment for the defendants.

**I**

We review an order granting a Rule 12(b)(6) motion to dismiss *de novo* and affirm if the complaint fails to include sufficient facts "to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1949 (2009), quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Because we must "construe the complaint in the light most favorable to the plaintiff, accepting as true all well-pleaded facts alleged, and drawing all possible inferences in her favor" our analysis relies on the facts in the Complaint and the warrant, of which the district court took judicial notice. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).

Woodward's claim is easily eliminated. This court has no way of knowing the basis for Woodward's suit because his complaint is so sparse that it is impossible to discern any potential claim for relief, plausible or otherwise. Only one paragraph in the complaint mentions Woodward:

> Plaintiff Mike Woodward, the business' 24 hour security guard was taking a nap at the time of the raid and suffered the start of his life when awakened by the commands of police officers with the laser sights pointed at his eyes. The officers intended to fire the weapons if he had moved mere inches.

Complaint, ¶ 46. The district court interpreted this paragraph as alleging a claim of excessive force under 42 U.S.C. § 1983, but even under that generous reading the court found that the facts failed to establish a plausible claim. We agree. With Woodward out of the picture, we

focus the rest of this opinion on the four theories raised by Justice.

Count one alleges civil rights violations by the Town and its officers; Justice has sued the officers in their individual and official capacities. To state a § 1983 claim, Justice must establish that the defendants deprived him of a right secured by the U.S. Constitution or laws. See *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970). Justice alleges the following four violations: (1) violation of his Fourth Amendment rights because the business license ordinance is overbroad and not tied to a valid regulatory purpose; (2) violation of his Fourth Amendment rights because the officers executing the warrant knew or should have known that the warrant lacked probable cause; (3) violation of his Second Amendment right to bear arms because the Town prohibits the possession of unregistered firearms; and (4) violation of his Fourteenth Amendment rights (for reasons unstated).

We first address the business licence ordinance. The Town requires that any person engaging in or managing a business obtain a business license. CICERO, ILL., CODE OF ORDINANCES § 26-31 (2008). Illinois law permits the Town to require businesses to have licenses. The Town qualifies as a home-rule unit under the Illinois Constitution, ILL. CONST. art. VII, § 6(a), and so it has the power to regulate for the protection of public health, safety, morals, and welfare, and the power to license. Illinois explicitly grants municipalities the authority to issue and revoke licenses. 65 ILCS 5/11-60-1. Justice argues that the purpose of the licensing ordinance is limited to revenue

gathering, but the district court found that the purpose was more broadly to protect the general health and welfare of the Town's citizens. We agree with the district court.

Justice also argues that the ordinance is overbroad; he relies on § 26-326, which states, "Without first having obtained a license for the operation of such a business from the town, no person shall conduct or operate any of the following: . . . (22) Manufacturing or treatment or distribution or storage of any products of any nature whatsoever." Justice asserts that this section requires a homeowner storing gas for a lawnmower to obtain a business license. But this argument ignores the context of the subsection, which indicates that it pertains only to people operating a business. So read, there is no conceivable argument that the business license ordinance has strayed beyond constitutional boundaries. As Justice has not alleged facts showing that the business ordinance violates federal law, his § 1983 claim fails. Because count two reiterates Justice's argument about the business license ordinance, it fails to state a claim for the same reasons.

Justice's claim that the search violated the Fourth Amendment was properly rejected because he admits that the police searched his business pursuant to a warrant. The district court took judicial notice of the fact that a judge of the Cook County Circuit Court issued that warrant upon a finding of probable cause to believe that Justice was violating numerous local ordinances. The issuing judge relied on the affidavit of Larry Hibbert, a

business license and building inspector for the Town. The affidavit included the following assertions: Hibbert has many years of experience in the chemical industry and inspecting manufacturing and industrial properties; Hibbert smelled chemicals while at Justice's business, and, based on his experience, believes the chemicals are likely solvents; Justice has previously refused to allow inspections, in violation of an order from an administrative judge; Justice admitted to operating a business without a license.

Justice has attempted to attack the basis of the state judge's probable cause finding, but to no avail. He argues that Hibbert lacked the experience to identify the smell as a solvent, but this argument makes little sense given Hibbert's asserted "many years of experience" in the chemical industry. Justice also alleges that Hibbert intentionally excluded a 2005 finding by the Town's fire chief that Justice's building substantially complied with building and fire codes. Even if we assume that Hibbert deliberately excluded the information, an inspection almost a year old does not negate probable cause based on events subsequent to the inspection—particularly when those events include Justice's admitting to violating one of the nine ordinances and refusing to permit an inspection despite the order of an administrative judge. Justice's final argument—that the warrant lacks probable cause because Hibbert spelled the name of the business as "Microsales" rather than "Microcosm"— similarly fails to undermine the finding of probable cause. Finally, Justice claims that the warrant is invalid because it was amended to list a second address for

the same building without referencing the first warrant or Hibbert's affidavit. This is simply false; the issuing judge explicitly stated that he issued the amended warrant after examining the original warrant. Taking into account these incontrovertible facts, we conclude that Justice is not entitled to proceed on his claim that his Fourth Amendment rights were violated by the search.

The district court noted additional reasons why the Complaint fails to state a claim for a violation of Justice's Fourth Amendment rights. In order to do so for his official-capacity and municipal liability theory, Justice had to show that the violation occurred because of "(1) the enforcement of an express policy of the City, (2) a widespread practice that is so permanent and well settled as to constitute a custom or usage with the force of law, or (3) a person with final policymaking authority." *Latuszkin v. City of Chicago*, 250 F.3d 502, 504 (7th Cir. 2001); see *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978). The Complaint's sole mention of a policy or practice appears in Paragraph 30: "[t]he Town of Cicero has a policy and practice of shutting down businesses that do not purchase business licenses." Justice's failure to allege any policy or practice causing the allegedly illegal search is fatal to his claim against the Town and the officials in their official capacity. The individual-capacity claims against Dennis Doe and Jerry Jarosz cannot proceed for a different reason. While the Complaint names Doe and Jarosz in paragraph 3, it never mentions any action by either man; in fact, the Complaint never mentions them again. Additionally, as the district court recognized, qualified immunity protects officers who "reason-

ably but mistakenly conclude that probable cause is present." *Burns v. Reed*, 44 F.3d 524, 529 (7th Cir. 1995) (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991)). Given Hibbert's affidavit and the finding of probable cause by the judge, these two officers are each entitled to qualified immunity.

We note as well that the Town has argued, as an alternative ground for affirmance, that Justice's Fourth Amendment claims are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). We have not relied on that ground for two reasons. First, it is unclear from the record exactly what convictions or sentences Justice received, and without knowing that, we cannot tell how much of a *Heck* bar exists. Justice's complaint alleges that he was charged and prosecuted, but he also mentions receiving tickets. We know from the affidavit attached to the warrant that an administrative judge, before the search, found Justice in violation of three city ordinances, but there is no evidence of an administrative order finding Justice in violation of the gun ordinance. We do not know if the police just issued him tickets before confiscating the guns, or if he was also later found guilty of violating the ordinance in some quasi-judicial proceeding. Second, this court has not decided whether an administrative proceeding or a finding of a violation of a city ordinance triggers the *Heck* bar. *Cf. Swiecicki v. Delgado*, 463 F.3d 489 (6th Cir. 2006) (applying the *Heck* bar where plaintiff was convicted of violating a disorderly conduct ordinance); *Zhai v. Cedar Grove Municipality*, 183 F. App'x 253 (3d Cir. 2006) (applying the bar to plaintiff's guilty plea for violating a disorderly conduct ordinance). Because we

do not know the type of conviction or sentence involved here, we save for another day a more complete consideration of this issue.

We now turn to Justice's Second Amendment claim. The district court found that the Town's ordinance requiring the registration of all firearms did not violate Justice's constitutional rights because the Second Amendment does not regulate the activities of a state or its subdivisions, relying on this court's decision in *Quilici v. Village of Morton Grove*, 695 F.2d 261, 269-71 (7th Cir. 1982). It noted that the Illinois Constitution subjects the right to bear arms to the police power, and that Illinois permits municipalities to regulate the possession of firearms to protect the public health, safety, and welfare. See *Sklar v. Byrne*, 727 F.2d 633, 637 (7th Cir. 1984).

Since the date of the district court's opinion (October 10, 2007), there has been some water under the Second Amendment bridge. First, the Supreme Court decided *District of Columbia v. Heller*, 128 S. Ct. 2783 (2008), which struck down an ordinance of the District of Columbia that flatly prohibited the possession of handguns. Second, this court decided *National Rifle Ass'n of America v. City of Chicago,* 567 F.3d 856 (7th Cir. 2009), in which we concluded that the Second Amendment (under current Supreme Court law) is not one of the parts of the Bill of Rights that has been incorporated by the Fourteenth Amendment and thereby made applicable to the states. In *NRA*, we aligned ourselves with the Second Circuit's decision in *Maloney v. Cuomo*, 554 F.3d 56 (2d Cir. 2009), and expressed disagreement with the Ninth

Circuit's reasoning in *Nordyke v. King,* 563 F.3d 439 (9th Cir. 2009).

If, as we have held, the Second Amendment does not apply to the states and their subdivisions, then Justice has no case. Even if we are wrong and the Ninth Circuit has proven to be the better predictor of the Supreme Court's rulings, there is a critical distinction between the D.C. ordinance struck down in *Heller* and the Cicero ordinance. Cicero has not prohibited gun possession in the town. Instead, it has merely regulated gun possession under § 62-260 of its ordinance. The Town does prohibit the registration of some weapons, but there is no suggestion in the Complaint or the record that Justice's guns fall within the group that may not be registered. See § 62-261. Nor does *Heller* purport to invalidate any and every regulation on gun use; to the contrary, the Court in *Heller* disclaims any such intent:

> Like most rights, the right secured by the Second Amendment is not unlimited. From Blackstone through the 19th-century cases, commentators and courts routinely explained that the right was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose. . . . For example, the majority of the 19th-century courts to consider the question held that prohibitions on carrying concealed weapons were lawful under the Second Amendment or state analogues. . . . Although we do not undertake an exhaustive historical analysis today of the full scope of the Second Amendment, nothing in our opinion should be taken to

> cast doubt on longstanding prohibitions on the posses-
> sion of firearms by felons and the mentally ill, or
> laws forbidding the carrying of firearms in sensitive
> places such as schools and government buildings, or
> laws imposing conditions and qualifications on the
> commercial sale of arms. [FN26: We identify these
> presumptively lawful regulatory measures only as
> examples; our list does not purport to be exhaustive.]

128 S. Ct. at 2816-17 (citations omitted). Thus, even if we are wrong about incorporation, the Cicero ordinance, which leaves law-abiding citizens free to possess guns, appears to be consistent with the ruling in *Heller*.

Justice also argues that Cicero's ordinance is unconstitutional as applied to him because he is a citizen of Tennessee. Justice's domicile, however, is irrelevant. The ordinance applies to the possession of unregistered guns physically present in the Town and Cicero is where Justice kept the six guns at issue here. The Complaint, in summary, does not state a claim for a violation of Justice's Second Amendment rights.

Justice also alleges a violation of the Fourteenth Amendment, but he fails to explain the basis for this claim. The Complaint does assert that the Town's search and later closing of his business were improper because the Town President has the power to shut down a business without a search under certain circumstances. See § 26-40(a). We do not know what that has to do with Justice's case. Even if we interpret this assertion as a due process argument, it is nonsensical. That the Town President can shut down a business does not mean the Town lacks the power otherwise to enforce its ordinances.

In count three, Justice accuses the Town of violating federal and state antitrust laws because the water department (1) requires a separate water meter for his sprinkler system, (2) charges a minimum monthly fee for each meter, (3) charges a 33% late fee, and (4) charges a "usurious interest rate." Complaint, ¶ 5. Justice's claim fails at the outset because the Town's conduct is immunized from both state and federal antitrust law. Under the *Parker* doctrine, the actions of municipalities fall outside the reach of the federal antitrust laws if the municipality can "demonstrate that [its] anticompetitive activities were authorized by the State 'pursuant to state policy to displace competition with regulation or monopoly public service.'" *Hallie v. Eau Claire*, 471 U.S. 34 (1985) (quoting *Lafayette v. La. Power & Light Co.*, 435 U.S. 389, 413 (1978)). Illinois similarly exempts local governments from antitrust law "to the extent their activities are either (1) expressly or by necessary implication authorized by Illinois law and (2) within traditional areas of local government activity." 50 ILCS 35/1. Water supply is within a traditional area of local government activity and is expressly authorized by Illinois law; Illinois explicitly empowers local governments to "make all needful rules and regulations concerning the use of water supplied by the waterworks of the city or village" and to fix and collect water rates "as the corporate authorities may deem necessary or expedient . . . ." 65 ILCS 5/11-125-3. That is enough to protect the Town from both federal and state antitrust exposure.

Justice finally argues that requiring a separate meter for the sprinklers and charging such a high late fee and

minimum monthly fee exceed the Town's authority because the measures are not "necessary or expedient." We are not sure what kind of claim this is: substantive due process? taking? antitrust? administrative? Any way we look at it, however, it is plain to us that Justice has failed to state a claim in this case. The federal judiciary is not the body charged with setting fees for Cicero's water service, nor are we the ones who need to set the price for collection on delinquent accounts. Illinois law authorizes the Town to select the necessary measures to distribute water and otherwise to run this business.

Count four requires no additional discussion. In it, Justice asks for injunctive relief, punitive damages, and a receiver. These requests assume that he has prevailed on the antitrust claims he has tried to raise in count three. Count four thus falls along with count three.

* * *

We AFFIRM the district court's judgment for the defendants.