In the

# United States Court of Appeals

## For the Seventh Circuit

No. 10-2568

ACTIVE DISPOSAL, INC., et al.,

*Plaintiffs-Appellants*,

*v.*

CITY OF DARIEN, et al.,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 09 C 2930—**Matthew F. Kennelly**, *Judge.*

ARGUED JANUARY 7, 2011—DECIDED MARCH 14, 2011

Before MANION and WILLIAMS, *Circuit Judges,* and
CLEVERT,* *District Judge.*

MANION, *Circuit Judge.* Plaintiffs sued several munici-
palities claiming the municipalities' exclusive contracts
for trash disposal violate federal antitrust law. The
district court held that the contracts fell within the

* Hon. Charles N. Clevert, Jr., Chief Judge of the Eastern
District of Wisconsin, is sitting by designation.

state-action exception to antitrust law and dismissed the complaint. The state-action doctrine allows municipalities to engage in conduct that would otherwise violate antitrust law when the conduct is authorized by the state under a policy to displace competition. Plaintiffs appeal. Because the state-action doctrine applies to the municipalities' contracts for trash disposal, we affirm.

I.

In some communities across Illinois, when a person or business needs a dumpster for a spring cleaning or for bigger construction jobs, they can't just open the Yellow Pages and find the best deal. Instead, they have to use a specific company with which the municipality has an exclusive contract. While these contracts often have a financial benefit for the municipality, they also impose a cost on consumers who would prefer a different, probably less expensive, trash hauler. The contracts also prevent other trash haulers from competing in these markets. Plaintiffs are made up of two groups: trash haulers who want to compete for business, and businesses that wish to hire a cheaper trash hauler. In this case, their interest is limited to the removal of waste that is placed in large roll-off dumpsters. With their aligned interests, plaintiffs sued the defendant municipalities, claiming that their exclusive contracts run afoul of federal antitrust law.

The municipalities moved to dismiss the complaint, arguing that exclusive contracts for waste removal are permissible under the state-action doctrine, which

exempts states from federal antitrust law. *Parker v. Brown*, 317 U.S. 341, 350-51 (1943). The doctrine stems from the fact that the Sherman Antitrust Act, 15 U.S.C. §§ 1, *et seq.*, does not apply to sovereign entities. Over the years, the doctrine has been logically extended to shield municipalities from antitrust law when the municipality's actions are "authorized by the State pursuant to state policy to displace competition with regulation or monopoly public service." *Town of Hallie v. City of Eau Clair*, 471 U.S. 34, 39 (1985) (quotation omitted); *LaSalle Nat. Bank v. DuPage County*, 777 F.2d 377, 380-81 (7th Cir. 1985).

Here, the parties' dispute centers on whether Illinois has given its municipalities the authority to contract for the collection and disposition of waste. Illinois has an entire Act devoted to the powers of its municipalities, including their authority over waste. Among the provisions, one is titled "Contracts"; it empowers municipalities to make contracts "relating to the collection and final disposition, . . . of garbage, refuse and ashes." 65 ILCS 5/11-19-1(a).[1] The municipalities argued and the district court found that this statute authorizes the challenged contracts and that anti-competitive consequences are the natural and foreseeable result of such a contract. Thus, the district court held that the state-action doctrine applied and dismissed plaintiffs' complaint. They appeal.

---

[1] For much of the opinion, we cite to one part of the Illinois statutes, specifically 65 ILCS 5/11-19-1, *et seq*. Further references will cite to each part with the Act as § 1 and so forth.

## II.

We review the granting of a motion to dismiss de novo and affirm if the complaint does not include facts that state a plausible claim for relief. *Justice v. Town of Cicero*, 577 F.3d 768, 771 (7th Cir. 2009). Our analysis rests on the complaint, and we construe it in the light most favorable to the plaintiffs, accepting as true all well-pleaded facts alleged and drawing all permissible inferences in their favor. *Id.*

## A.

On appeal, plaintiffs argue that the municipalities' power to make "exclusive" contracts for waste removal arises not as the district court found under § 1, but under § 5. Section 5 is titled "Method of Disposition"; it gives municipalities the authority to prescribe an exclusive method for disposing of trash and lists several acceptable methods, including dumping it in a landfill. Pertinent here, it provides that such a method can be enacted despite the effect it has on competition, and it states that "[m]aterial that is intended or collected to be recycled is not garbage, refuse or ashes." 65 ILCS 5/11-19-5. Plaintiffs argue that since § 5 states that the method may be "exclusive" and that competition will be displaced, the municipalities' authority to enter into exclusive contracts comes from § 5, and not § 1. And since § 5 is limited to disposing of garbage, refuse, and ashes, the municipality does not have the power to make contracts concerning recyclables, because "[m]aterial that is intended or collected to be recycled is not garbage, refuse, or ashes." *Id.*

To address plaintiffs' argument, the first issue is which section authorizes municipalities to create exclusive contracts for the collection and disposition of waste. Looking at the text of § 5, it does not appear that it gives municipalities the power to contract. For one, the text of § 5 does not deal with contracts. It deals with the power to prescribe exclusive methods of disposing of garbage:

> Any municipality may provide by ordinance that such method or methods shall be the exclusive method or methods for the disposition of garbage, refuse and ashes to be allowed within that municipality.

65 ILCS 5/11-19-5. The term "exclusive" in that sentence does not refer to contracts or dealings, but to the method of disposal. Moreover, while a statute's title does not define its meaning, it is relevant. *United States v. Chemtco*, 274 F.3d 1154, 1159 (7th Cir. 2001). And here, § 5's text accords with its title: "Method of Disposition."

Similarly, the title of § 1 "Contracts" mirrors its text, which grants municipalities the power to make contracts for the collection and disposition of garbage, refuse, and ashes. In fact, § 1 is the only part of the entire Act that mentions contracts. The fact that § 1 does not use the term "exclusive" is irrelevant to whether it gives municipalities the authority to enter into an exclusive contract—after all an exclusive contract is merely a subset of the power to contract. Moreover, this reading is buttressed by the fact that for thirty-five years Illinois courts have read § 1 as providing municipalities the

authority to form contracts. *E.g.*, *Urban Products International, Ltd. v. National Disposal Service*, 336 N.E.2d 138, 143 (Ill Ct. App. 1975) (citing 11-19-1); *City of Decatur v. Waste Hauling, Inc.*, 509 N.E.2d 716, 719 (Ill. Ct. App. 1987) (citing 11-19-1). In contrast, plaintiffs have not cited to a single Illinois case that suggests the power to make these sorts of contracts falls under § 5. Thus, we are satisfied that the municipalities' authority to enter into these contracts comes from § 1.

Plaintiffs' other argument is that whatever authority municipalities have to make contracts under § 1, it does not include the power to make exclusive contracts when recyclables are involved. Plaintiffs claim that recyclables are being placed in the roll-off dumpsters; therefore, the municipalities cannot make exclusive contracts for the roll-offs' removal. Again, their argument hangs on § 5. They argue that under the canon of statutory construction *in pari materia*, the broad grant of power in § 1 to contract for the collection or final disposition of "garbage, refuse and ashes" is circumscribed by the language in § 5 that "[m]aterial that is intended or collected to be recycled is not garbage, refuse or ashes." 65 ILCS 5/11-19-5. That canon of interpretation simply means that we interpret statutes dealing with the same subject (here, trash) "with reference to one another to give them harmonious effect." *People v. McCarty*, 858 N.E.2d 15, 31 (Ill. 2006).

Reading the language in § 5 the way plaintiffs urge does not create a harmonious effect within the Act's subsections; instead, it presents an uncertain and confused

statutory scheme. After authorizing municipalities to enter into contracts for the disposal of "garbage, refuse, and ashes" in § 1, the legislature defined each of these terms in § 2, which is titled "Definitions." Under plaintiffs' theory, the language in § 5 would redefine those definitions by excluding recyclables from the definition of "garbage, refuse, and ashes." When the Illinois legislature intended to exclude a waste product from "garbage, refuse, and ashes," it expressly stated that exemption in § 2's definitions. Specifically, after defining refuse, the legislature expressly stated:

> but refuse does not mean earth and wastes from building operations, nor shall it include solid wastes resulting from industrial processes and manufacturing operations such as food processing wastes, boiler-house cinders, lumber, scraps and shavings.[2]

Had Illinois intended to also exempt recyclables from the definition of "garbage, refuse, and ashes," it could have easily done so in the definitions section. Yet it did not, and this negates plaintiffs' argument that § 5 modifies § 2's definition and the power granted municipalities in § 1. *See United States v. Davis*, 471 F.3d 783, 787 (7th Cir. 2006) (noting the legislature has made it clear that if it wants to make a specific point in the law, it knows how to).

---

[2] Plaintiffs have not alleged in the complaint, or argued here or below, that the municipalities have made contracts for the removal of waste that is exempted under § 2 and thus beyond the municipalities' power to contract. And our opinion in no way speaks to such contracts.

Not only does that cut against plaintiffs' argument, but also reading the statutes the way plaintiffs urge would render some of the language in § 2 superfluous. Refuse includes such items as "paper," "cartons," "boxes," "metals," "tin cans," "metal furniture," and "glass." *Id.* All of these things are what we would commonly think of as "recyclables," but they are clearly considered refuse under § 2. Thus, plaintiffs' reading would either lead to confusion about what constitutes refuse or it would render superfluous the delineation of "paper," "glass," and other such items in the definition of refuse. *Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 253 (1992) ("[C]ourts should disfavor interpretations of statutes that render language superfluous.").

Moreover, the statutory scheme makes sense when the line "[m]aterial that is intended or collected to be recycled is not garbage, refuse or ashes" is read in context of § 5. Municipalities can enact ordinances that provide for exclusive methods for disposing of garbage, refuse, and ashes. For example, they can require that it only be put in a landfill or incinerated. The same cannot be done with recyclables. They are different. Once certain categories of disposables are designated as recyclables, they are not meant to be put into landfills, and under § 5 a municipality does not have the power to prescribe an exclusive means for disposing of them. Rather, Illinois has a complex system under the Illinois Environmental Protection Agency that deals with recy-

cling.[3] *See* 415 ILCS 15/1, *et seq.* (West Supp. 2010); *Id.* 20/1, *et seq.* (West Supp. 2010). Given the subject matter of § 5 and the broad authority of Illinois's Environmental Protection Agency over recycling programs, the line "[m]aterial that is intended or collected to be recycled is not garbage, refuse or ashes" makes sense in the context of § 5. *Dolan v. Postal Ser.*, 546 U.S. 481, 486 (2006) ("Interpretation of a word or phrase depends upon reading the whole statutory text, considering the purpose and context of the statute.").

In sum, transposing the language from § 5 to the rest of the Act does not alleviate ambiguity; instead, it would either render certain language superfluous or create anomalies and unexplained distinctions in the way refuse is defined. In contrast, reading the language "[m]aterial that is intended or collected to be recycled is not garbage, refuse or ashes" within the context of the § 5—and confined to § 5—Illinois's statutory scheme remains clear. Thus, we reject plaintiffs' argument that the language in § 5 should be read to modify the rest of the Act.

---

[3] The precise interplay between the Act and the statutes governing the Environmental Protection Agency and its authority over municipalities is beyond the questions presented here, and nothing in our opinion should be read to express an opinion on it. The issue has not been briefed.

B.

The next issue is whether the state-action doctrine shields the municipalities from antitrust law when they create monopolies for the collection and disposition of garbage, refuse, and ashes under § 1. We look to the statute and ask two questions: first, whether it authorizes the challenged conduct; second, whether the anti-competitive effects are a foreseeable result of the authorization. *LaSalle Nat. Bank*, 777 F.2d at 381. If the answers to both questions are yes, then the state intended the municipalities' "action to be immune from antitrust challenge." *Unity Ventures v. Cty. of Lake*, 841 F.2d 770, 777 (7th Cir. 1988).

Section 1 authorizes municipalities to contract for the collection and disposition of garbage, refuse, and ashes. The remaining question is whether the state authorized these contracts under a policy "'to displace competition with regulation or monopoly public service.'" *Town of Hallie*, 471 U.S. at 39 (quoting *Lafayette v. La. Power & Light Co.*, 435 U.S. 389, 413 (1978)). In this context, legislatures aren't required to articulate how competition will be displaced. *Id.* at 42-43. All that matters is whether "the anti-competitive effects would logically result from the authority to regulate." *Campbell v. City of Chicago*, 823 F.2d 1182, 1184 (7th Cir. 1987).

Waste and its regulation, like sewer services, remain a traditional area of local concern. *Consumers Co. v. City of Chicago*, 313 Ill. 408, 413-14 (1924). Often municipalities use a single hauler for the collection of trash. *Id.* at 413. In the context of municipal powers, it is generally understood that the authority to contract contemplates

the power to create exclusive contracts. *Southern Disposal, Inc. v. Tex. Waste Mgmt.*, 161 F.3d 1259, 1263 (10th Cir. 1998) (noting "although the enabling statute does not explicitly authorize exclusive contracts, such agreements are 'a foreseeable result' of the general statutory authorization to contract"); *LaSalle Nat. Bank*, 777 F.2d at 381-82 (finding the statute authorized exclusive contracts when it provided that the counties "may enter into and perform contracts . . . with any municipal[ity]"). Thus, when the legislature provides that municipalities may contract for the collection and disposition of trash, those contracts will often be exclusive, a monopoly will be created, and anti-competitive effects will necessarily follow. *See Springs Ambulance Serv., Inc. v. City of Rancho*, 745 F.2d 1270, 1273 (9th Cir. 1984); *Tal v. Hogan*, 453 F.3d 1244, 1259 (10th Cir. 2006) (authority to make contracts has foreseeable anti-competitive effect). Therefore, we hold that the anti-competitive effects are a foreseeable result of Illinois's authorization for municipalities to make contracts for the collection and disposition of garbage, refuse, and ashes. Accordingly, the state-action doctrine applies.

III.

In sum, we reject plaintiffs' arguments that § 5 controls the Illinois municipalities' power to contract for the collection and disposition of garbage, refuse, and ashes. We also reject plaintiffs' argument that the same section circumscribes the definitions of "garbage, refuse, and ashes" as those terms are used in § 1 and § 2.

Further, we find that the state-action doctrine applies to the municipalities' power to make exclusive contracts for the collection and disposition of garbage, refuse, and ashes. Therefore, the judgment of the district court is AFFIRMED.