In the

# United States Court of Appeals

## For the Seventh Circuit

No. 13-2337

FORTRES GRAND CORPORATION,

*Plaintiff-Appellant,*

*v.*

WARNER BROS. ENTERTAINMENT INC.,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Northern District of Indiana, South Bend Division.
No. 12-cv-00535 — **Philip P. Simon**, *Chief Judge.*

ARGUED DECEMBER 10, 2013 — DECIDED AUGUST 14, 2014

Before MANION, ROVNER, and HAMILTON, *Circuit Judges.*

MANION, *Circuit Judge.* Fortres Grand Corporation develops and sells a desktop management program called "Clean Slate." When Warner Bros. Entertainment used the words "the clean slate" to describe a hacking program in the movie, *The Dark Knight Rises*, Fortres Grand noticed a precipitous drop in sales of its software. Believing Warner Bros.' use of the words "clean slate" infringed its trademark and caused the decrease in sales, Fortres Grand brought this suit. Fortres Grand alleged that

Warner Bros.' use of the words "clean slate" could cause consumers to be confused about the source of Warner Bros.' movie ("traditional confusion") and to be confused about the source of Fortres Grand's software ("reverse confusion"). The district court held that Fortres Grand failed to state a claim under either theory, and that Warner Bros.' use of the words "clean slate" was protected by the First Amendment. Fortres Grand appeals, arguing only its reverse confusion theory, and we affirm without reaching the constitutional question.

## I. Factual Background

Fortres Grand develops and sells a security software program known as "Clean Slate." It also holds a federally registered trademark for use of that name to identify the source of "[c]omputer software used to protect public access computers by scouring the computer drive back to its original configuration upon reboot." Trademark Reg. No. 2,514,853. As the description in the trademark registrations suggests, the program wipes away any user changes to a shared computer (wiping the slate clean, so to speak). It is the kind of program that might be used at schools, libraries, hotels, etc., to keep public computers functioning properly and free of private data. Because a desktop management program is security software, its single most important characteristic is its trustworthiness. Fortres Grand had been able to establish its Clean Slate software in the marketplace as a trustworthy program.

In July 2012, Warner Bros. released *The Dark Knight Rises*, the third and final installment in a film depiction of the comic-book hero Batman. The film was an immense commercial success. In the film, Batman and his allies battle a shadowy

organization hell-bent on the destruction of Gotham City, Batman's home town. One of Batman's allies, the antihero Selina Kyle (Catwoman), begins the story as an unwitting pawn of the shadowy organization. In exchange for her unique services as a cat burglar, the organization agrees to give her a software program known as "the clean slate," which was developed by "Rykin Data Corporation" and enables an individual to erase all traces of her criminal past from every database on earth so that she may lead a normal life (that is, to wipe her slate clean).[1] But after Kyle completes her task, she is betrayed and told that the program, "the clean slate," does not exist. When she becomes aware of the extent of the shadowy organization's plans—to detonate a nuclear device in Gotham City—she aids Batman in neutralizing the threat. Near the climax of the movie, the destruction of the city appears imminent. But Batman assembles a team, including Selina Kyle, to try to save the city. Batman's alter ego—the billionaire, industrialist, and philanthropist Bruce Wayne—had secretly acquired and hid the clean slate program. Batman gives "the clean slate" program to Selina Kyle in exchange for her aid. After rendering the agreed aid and obtaining the means to a clean slate and escape, she nonetheless stays to continue

---

[1] Unlike other depictions of Batman, such as his appearance in the Justice League comics, there are no alien races from other planets, so wiping all traces of oneself from *earth's* databases is sufficient. *See, e.g.,* WIKIPEDIA.ORG, *List of locations of the DC Universe, Planetary Systems,* http://en.wikipedia.org/wiki/List_of_locations_of_the_DC_Universe#Planetary_systems (listing the various planets in the DC Comics universe, in which the Justice League stories take place). All websites cited in this opinion were last visited July 31, 2014, and copies are saved with the court.

combating the nuclear threat. (*Spoiler Alert*) Batman and his allies are able to save Gotham City and, in the closing scene of the movie, we see that Selina Kyle has apparently used the program to erase her criminal past and that she is leading a "normal" life with Bruce Wayne (to the extent dining at a Florentine café with the billionaire alter ego of the Caped Crusader is normal).

Additionally, as part of the marketing of the movie, two websites were created purporting to be affiliated with the fictional Rykin Data Corporation.[2] The websites contained descriptions of the clean slate hacking tool and its operation and an image of a fictional patent. Nothing was available for purchase or download from the websites—they were purely an informational extension of the fictional Gotham City universe.[3]

---

[2]   Warner Bros. informs us in its response brief that it did not create these sites, but rather, that they were created by fans of the movie. We have no reason to doubt that assertion (nor does Fortres Grand dispute it in its reply brief), but because we are reviewing this issue on the appeal of an order dismissing the complaint for failure to state a claim, we assume that Fortres Grand's allegation that the websites were created by Warner Bros. is true.

[3]   Fortres Grand initially argued that it was error to consider Warner Bros.' printouts of the websites which Fortres Grand had referenced in its complaint. But Warner Bros. responded that Fortres Grand had not disputed the printouts' authenticity (i.e., that they are "concededly authentic"). Instead of doing so in its reply, Fortres Grand made arguments from the websites' content *consistent* with what Warner Bros.' printouts depicted. Accordingly, though we are skeptical of considering the content of websites allegedly within the defendant's control, Fortres Grand has waived this issue. *Long-Gang Lin v. Holder*, 630 F.3d 536, 543 (7th Cir. 2010) ("The failure to adequately develop and support [an argument] results in

(continued...)

After the film was released, Fortres Grand noticed a significant decline in sales of its Clean Slate software. It believes that this decline in sales was due to potential customers mistakenly believing that its Clean Slate software is illicit or phony on account of Warner Bros.' use of the name "the clean slate" in *The Dark Knight Rises*. Accordingly, Fortres Grand filed suit alleging that Warner Bros.' use of the words "clean slate" in reference to the software in its movie infringed Fortres Grand's trademark in violation of Lanham Act §§ 32, 43 (codified at 15 U.S.C. §§ 1114, 1125 respectively), and Indiana unfair competition law. But, on Warner Bros.' motion, the district court dismissed Fortres Grand's complaint under Rule 12(b)(6) for failing to state a claim. The district court concluded that Fortres Grand had not alleged a plausible theory of consumer confusion, upon which all of its claims depend, and that Warner Bros.' use of the words "the clean slate" was protected by the First Amendment. Fortres Grand appeals.

## II. Discussion

"We review the granting of a motion to dismiss de novo and affirm if the complaint does not include facts that state a plausible claim for relief." *Active Disposal, Inc. v. City of Darien*, 635 F.3d 883, 886 (7th Cir. 2011) (citing *Justice v. Town of Cicero*, 577 F.3d 768, 771 (7th Cir. 2009)). "Our analysis rests on the complaint, and we construe it in the light most favorable to the plaintiffs, accepting as true all well-pleaded facts alleged and drawing all permissible inferences in their favor." *Id.* Allega-

---

(…continued)
waiver.").

tions of consumer confusion in a trademark suit, just like any other allegations in any other suit, cannot save a claim if they are implausible. *See Eastland Music Grp., LLC v. Lionsgate Entm't, Inc.*, 707 F.3d 869, 871 (7th Cir. 2013) (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)), *cert. denied*, 134 S. Ct. 204 (2013)).

All three of Fortres Grand's claims depend on plausibly alleging that Warner Bros.' use of the words "clean slate" is "likely to cause confusion." Lanham Act § 32, 15 U.S.C. § 1114(1)(a) (infringement of registered trademarks); Lanham Act § 43, 15 U.S.C. § 1125(a)(1) (infringement of unregistered trademarks and other unfair competition); *see Dwyer Instruments, Inc. v. Sensocon, Inc.*, 873 F. Supp. 2d 1015, 1040 (N.D. Ind. 2012) ("The analysis under the Lanham Act for unfair competition also applies to claims for unfair competition under Indiana common law.").[4] But general confusion "in the air" is not actionable. Rather, only confusion about "origin, sponsorship, or approval of … goods" supports a trademark claim. 15

---

[4]   Fortres Grand argues generally that Indiana unfair competition law is "broader" and is a "general category into which a number of new torts may be placed," but fails to explain how that breadth would change the analysis in this case, or what new tort it wants us to adopt for Indiana. Accordingly, the argument that there is any difference is waived. *Long-Gang Lin v. Holder*, 630 F.3d 536, 543 (7th Cir. 2010) ("The failure to adequately develop and support [an argument] results in waiver."). Indeed, all relevant authority we have found analyzes Indiana unfair competition claims *based on trademarks* the same as Lanham Act trademark claims, so we analyze all the claims together. *See Dwyer Instruments*, 873 F. Supp. 2d at 1040; *see also Vision Ctr. Nw., Inc. v. Vision Value, LLC*, 673 F. Supp. 2d 679, 683 and n.2 (N.D. Ind. 2009) (laying out additional authority for this proposition).

U.S.C. § 1125; *see also* 4 McCarthy on Trademarks and Unfair Competition § 24:6 (4th ed.) (describing the various semantic formulations of the actionable objects of confusion, which are the same under §§ 1114 and 1125); *Custom Vehicles, Inc. v. Forest River, Inc.*, 476 F.3d 481, 484 (7th Cir. 2007) (using the phrase "emanates from, is connected to, or is sponsored by" partially drawn from "affiliation, connection, or association" in § 1125 to communicate the same concept). Further, "goods" means "the tangible product sold in the marketplace.'" *Eastland Music*, 707 F.3d 869, 872 (quoting *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 31 (2003)). For convenience, we generally use the word "origin" as shorthand for "origin, sponsorship, or approval."

In a traditional trademark action, the confusion of origin is mistaking a junior user's product as originating from a senior user. ("Senior user" meaning the first, and protected, user of the mark and "junior" user meaning a later, and potentially infringing, user of the mark.) Initially, Fortres Grand argued that consumers could be confused into thinking that the movie was sponsored by Fortres Grand by virtue of the appearance of "clean slate" software. It has since abandoned those arguments on appeal.

Instead, Fortres Grand argues that it has stated a claim via "reverse confusion," a theory that we have recognized. *See Peaceable Planet, Inc. v. Ty, Inc.*, 362 F.3d 986, 987 (7th Cir. 2004) (citing *Sands, Taylor & Wood Co. v. Quaker Oats Co.*, 978 F.2d 947, 957–58 (7th Cir. 1992)); *see also* 4 McCarthy §§ 23:10, 25:6 n.1 (distinguishing between "reverse passing off" and "reverse confusion"). In reverse confusion, the *senior user's* products are

mistaken as originating from (or being affiliated with or sponsored by) the *junior user*. This situation often occurs when the junior user is a well-known brand which can quickly swamp the marketplace and overwhelm a small senior user. *Quaker Oats Co.*, 978 F.2d at 950 (junior user was the manufacturer of Gatorade); *see also* 4 McCarthy § 23:10 (discussing examples of reverse confusion cases against junior users like Goodyear, Maytag, and Mattel). The harm from this kind of confusion is that "the senior user loses the value of the trademark—its product identity, corporate identity, control over its goodwill and reputation, and ability to move into new markets." *Quaker Oats*, 978 F.2d 947, 957. To state a claim for infringement based on reverse confusion, Fortres Grand must plausibly allege that Warner Bros.' use of the words "clean slate" in its movie to describe an elusive hacking program that can eliminate information from any and every database on earth has caused a likelihood that consumers will be confused into thinking that Fortres Grand's Clean Slate software "emanates from, is connected to, or is sponsored by [Warner Bros.]."[5] *Custom Vehicles*, 476 F.3d at 484 (citing *Lucent Info.*

---

[5] Fortres Grand is correct that the district court erroneously inverted this test while applying it (essentially applying the traditional test), requiring that Fortres Grand plausibly allege that consumers have been confused into thinking that the fictional software or the movie "'emanates from, is connected to, or is sponsored by' Fortres Grand." *Fortres Grand Corp. v. Warner Bros. Entm't Inc.*, 947 F. Supp. 2d 922, 929–30 (N.D. Ind. 2013) (incorrectly inserting Fortres Grand into the test as the junior user where Warner Bros. ought to have been inserted).

*Mgmt., Inc. v. Lucent Techs., Inc.*, 186 F.3d 311, 316 (3d Cir. 1999).[6]

In considering the plausibility of such an allegation of confusion we look to the applicable test for likelihood of confusion. In this circuit, we employ a seven-factor test:

> [1] the degree of similarity between the marks in appearance and suggestion; [2] the similarity of the products for which the name is used; [3] the area and manner of concurrent use; [4] the degree of care likely to be exercised by consumers; [5] the strength [or "distinctiveness"] of the complainant's mark; [6] actual confusion; and [7] an intent on the part of the alleged infringer to palm off his products as those of another.

*McGraw-Edison Co. v. Walt Disney Prods.*, 787 F.2d 1163, 1167–68 (7th Cir. 1986) (quoting *Helene Curtis Indus., Inc. v. Church & Dwight Co., Inc.*, 560 F.2d 1325, 1330 (7th Cir. 1977)).[7] The district court relied heavily on the "similarity of the products" factor in its conclusion that Fortres Grand failed to state a claim, concluding that Fortres Grand's software and Warner

---

[6] The list "emanates from, is connected to, or is sponsored by" is merely a rephrasing of "origin, sponsorship, or approval" and "affiliation, connection, or association" in § 1125, which we also apply in the § 1114 context. *See, e.g.*, *McGraw-Edison Co. v. Walt Disney Prods.*, 787 F.2d 1163, 1166 (7th Cir. 1986) ("a likelihood of confusion as to the origin of its products [is] required to prove a violation of 15 U.S.C. §§ 1114, 1125").

[7] However, the seventh factor is irrelevant in a reverse confusion analysis because the junior user is not trying to profit from the senior user's brand. *Quaker Oats*, 978 F.2d at 961.

Bros.' movie were so dissimilar that confusion was implausible. *See Fortres Grand*, 947 F. Supp. 2d at 928–29. Fortres Grand argues on appeal that it was error for the district court to rely so heavily on one factor, and that the proper product to compare to its software is the fictional software in the movie made by the fictional Rykin Data Corporation. There is little authority on how to treat the "similarity of the products" factor when one of them is fictional, *see Fortres Grand*, 947 F. Supp. 2d at 924 (citing 6 McCarthy § 31:149), but what few cases have confronted the issue have considered the likelihood of confusion between the senior user's product and the junior user's creative work—not any fictional product therein. *See Davis v. Walt Disney Co.*, 430 F.3d 901, 904 (8th Cir. 2005) (comparing senior user's products and services with Disney's movie—*not* the fictional product in the movie bearing a mark similar to the senior user's); *Ocean Bio-Chem, Inc. v. Turner Network Television, Inc.*, 741 F. Supp. 1546, 1557 (S.D. Fla. 1990) (similarly comparing the senior user's product to Turner's movie rather than the fictional product contained therein). This approach makes sense in light of the Supreme Court's emphasis on confusion about the origin, sponsorship, or approval of "the tangible product sold in the marketplace." *Dastar*, 539 U.S. at 31. In fact, in forward confusion cases where the allegedly infringing use is in a junior user's movie, the Supreme Court's interpretation of "goods" in § 1125 likely compels lower courts to look to the movie, since it is the junior user's only tangible product in the marketplace about which consumers could be confused. In reverse confusion based on a junior user's movie, however, it is not so cut-and-dried. Because the confusion is about the origin, sponsorship, or approval of the *senior user's* product,

which is tangible, there is no clear command that we compare that product (the software) to Warner Bros.' tangible product (its movie) when considering the factor.[8] Regardless, because the infringing act is the junior user's use of the mark "in connection with any goods," 15 U.S.C. § 1125, we think the word "goods" must mean the same thing there (tangible goods) that it means in the later clause, and so we conclude that Warner Bros.' movie—its tangible good—is the correct comparator product, even while using the product-similarity factor to analyze reverse confusion.[9] For the purposes of Rule 12(b)(6), we also consider the Rykin Data websites as advertisements for its tangible good, the movie.

But that does not end the product comparison question. While movies and desktop management software are dissimilar products, "[t]he fact that the products at issue may be 'very different' is not dispositive of the issue of the similarity of the products in determining the existence of a likelihood of confusion between products. The question is 'whether the products are the kind the public attributes to a single source.'" *McGraw-Edison*, 787 F.2d at 1169 (quoting *E. Remy Martin & Co., S.A. v. Shaw-Ross Int'l Imports, Inc.*, 756 F.2d 1525, 1530 (11th

---

[8]   We assume the Supreme Court would view a downloaded file from a website as the tangible product sold by Fortres Grand in this context, even though it is not literally tangible. We think, in general, the relevant question of source in the context of a download is which entity is responsible for the file hosted on the server which is downloaded by the consumer.

[9]   The language is similarly tied to goods in 15 U.S.C. § 1114 (making actionable the confusing use of a mark "in connection with the sale, offering for sale, distribution, or advertising of any goods").

Cir. 1985)). Infringement can occur if the trademarks are used on "goods related in the minds of consumers in the sense that a single producer is likely to put out both goods." *Id*.

In *McGraw-Edison*, we held there was sufficient evidence to raise a question of fact about "whether the products are the kind the public attributes to a single source" where the evidence showed that McGraw-Edison (the senior user) made electrical fuses bearing the "TRON" mark and that Disney (the allegedly infringing junior user) had made videogames, toys, and had licensed telephones bearing the "TRON" mark (styled after its TRON movie). *Id.* In *McGraw-Edison*, the infringing mark was used on Disney's merchandise for the TRON movie. We held that "utilitarian electrical products" could be confused as originating from the same source as "entertainment-based" products powered by electricity when both are labeled "TRON." *Id.* It is also plausible that entertainment-based products could be confused as being affiliated with (by means of licensing) the same source as a movie.

The problem here is that Fortres Grand wants to allege confusion regarding the source of a utilitarian desktop management software based solely on the use of a mark in a movie and two advertising websites. Warner Bros., unlike Disney, does not sell any movie merchandise similar to Fortres Grand's software which also bears the allegedly infringing mark. Fortres Grand mentions that Warner Bros. sells video games. Desktop management software and video game software may be similar enough to make confusion plausible, but Fortres Grand does not allege that the *video games* bear the "clean slate" mark. Nor does Fortres Grand allege that desktop management software is a commonly merchandised movie tie-

in (as a video game might be). Accordingly, the only products available to compare—Fortres Grand's software and Warner Bros.' movie—are quite dissimilar, even considering common merchandising practice. Fortres Grand has alleged no facts that would make it plausible that a super-hero movie and desktop management software are "goods related in the minds of consumers in the sense that a single producer is likely to put out both goods."

Fortres Grand emphasizes that we have clearly stated that courts should not rely on the weakness of a single factor to dispose of a trademark infringement claim. *AHP Subsidiary Holding Co. v. Stuart Hale Co.*, 1 F.3d 611, 616 (7th Cir. 1993) ("None of the seven confusion factors alone is dispositive in a likelihood of confusion analysis."). But its allegation of reverse confusion is just as implausible in light of the other factors. Both the movie and Fortres Grand's software are available on the internet, but the movie was shown first and primarily in theaters and Fortres Grand's software is only available at its website, not at other places on the internet. And anyone who arrives at Fortres Grand's website is very unlikely to imagine it is sponsored by Warner Bros. (assuming, safely, that Fortres Grand is not using Catwoman as a spokesperson for its program's efficacy). *See* FORTRESGRAND.COM, *Clean Slate 7*, http://www.fortresgrand.com/products/cls/cls.htm. And the movie websites, while on the internet, sell no products and are clearly tied to the fictional universe of Batman. Further, Warner Bros.' use of the mark is not a traditional use in the marketplace, but in the dialogue of its movie and in extensions of its fictional universe, so the "the area and manner of concurrent use" also makes confusion unlikely. Fortres Grand

also asserts that consumers of "security software," similar to what it sells, are discerning and "skeptical," which is indicative of a "degree of care likely to be exercised by consumers" making confusion unlikely. Additionally, the mark "clean slate" is just one variation of a phrase (pinakis agraphos in Greek (often translated "unwritten tablet") or tabula rasa in Latin (often translated "blank slate" or "scraped tablet")) that traces its origins at least as far back as Aristotle and is often used to describe fresh starts or beginnings.[10] While the use of the term may be suggestive for security software, its use descriptively (and suggestively) is quite broad, including in reference to giving convicted criminals fresh starts, to re-designing the internet, or, indeed, to a movie about an investigator with amnesia.[11] Accordingly, Warner Bros.' descriptive use of the words "clean slate" in the movie's dialogue to describe a program that cleans a criminal's slate is unlikely to cause confusion. *See Quaker Oats Co.*, 978 F.2d at 959 (7th Cir. 1992) ("In a reverse confusion case, then, it may make more

---

[10] See, e.g., WIKIPEDIA.ORG, *Tabula Rasa*, http://en.wikipedia.org/wiki/Tabula_rasa.

[11] *See, e.g.*, CLEANSLATE CHICAGO, *About*, http://www.cleanslatechicago.org/cs/about (community revitalization program that serves the additional purpose of providing job training to individuals, including those with criminal convictions); THE CARA PROGRAM, *Service Delivery Model*, http://www.thecaraprogram.org/sites/default/files/uploads/FY13%20Service%20Delivery%20Model.pdf (describing the staffing of the Cleanslate Chicago program); STANFORD UNIVERSITY, *Clean Slate Program*, http://cleanslate.stanford.edu/; INTERNATIONAL MOVIE DATABASE, *Clean Slate (1994)*, http://www.imdb.com/title/tt0109443/.

sense to consider the strength of the mark in terms of its association with the *junior user's* goods." (emphasis added)).

Finally, Fortres Grand speculates that there must have been actual confusion because of "internet chatter" and "web pages, tweets, and blog posts in which potential consumers question whether the CLEAN SLATE program, as it exists in *The Dark Knight Rises*, is real and could potentially work."[12] Am. Compl. at 5, ¶ 24. But this is not an allegation of actual confusion. This is an assertion that consumers are speculating that there really could be a hacking tool that allows a user to erase information about herself from every database on earth. *Id.* At best Fortres Grand's argument is that consumers are mistakenly thinking that its software may be such a hacking tool (or an attempt at such a hacking tool), and not buying it. But this is not reverse confusion about origin. Whoever these unusually gullible hypothetical consumers are, Fortres Grand has not and could not plausibly allege that consumers are confused into thinking

---

[12]   Fortres Grand also argues that its drop in sales means there must have been confusion. But that is a thin reed to lean on. Fortres Grand alleges that, as a result of the movie, "[o]nline searches for CLEAN SLATE now return hundreds of results relating to the CLEAN SLATE program from *The Dark Knight Rises*," Compl. at 5, ¶ 24, and that it has had to expend money on "corrective advertising." Far from implying confusion, these allegations merely logically connect Fortres Grand's loss of sales with its website showing up lower in search results. *See, e.g.*, CHITIKA.COM , *The Value of Google Result Positioning*, http://chitika.com/google-positioning-value (showing that the ten results on the first page of Google's search results for a particular term get *91.5%* of the traffic). And proof that internet searchers are more interested in exploring the feasability of a fictional hacking tool than in Fortres Grand's desktop management software is not proof that they are confused about the source of Fortres Grand's software.

Fortres Grand is selling such a diabolical hacking tool *licensed by Warner Bros*. Fortres Grand's real complaint is that Warner Bros.' use of the words "clean slate" has tarnished Fortres Grand's "clean slate" mark by associating it with illicit software. But this type of harm may only be remedied with a dilution claim. *See* 15 U.S.C. § 1125(c). And it would not be appropriate to use a contorted and broadened combination of the "reverse confusion" and "related products" doctrines to extend dilution protection to non-famous marks which are explicitly excluded from such protection by statute. *Id.* ("the owner of a *famous* mark … shall be entitled to an injunction against another person who … commences use of a mark … that is likely to cause … dilution by tarnishment of the *famous* mark" (emphasis added)).

In fact, the only factor to which Fortres Grand's allegations lend any strength is the similarity of the marks—both marks are merely "clean slate" or "the clean slate." But juxtaposed against the weakness of all the other factors, this similarity is not enough. Trademark law protects the source-denoting function of words used in conjunction with goods and services in the marketplace, not the words themselves. *Anti-Monopoly, Inc. v. Gen. Mills Fun Grp.*, 611 F.2d 296, 301 (9th Cir. 1979) ("It is the source-denoting function which trademark laws protect, and nothing more."). Assuming all Fortres Grand's other allegations are true, its reverse confusion allegation—that consumers may mistakenly think Warner Bros. is the source of Fortres Grand's software—is still "too implausible to support costly litigation." *Eastland Music*, 707 F.3d at 871. Accordingly, we need not—and do not—reach Warner Bros.' argument that its descriptive use of the words "clean slate" in the dialogue of

its movie is shielded by the First Amendment. *Eastland Music*, 707 F.3d at 871 ("It is unnecessary to consider possible constitutional defenses to trademark enforcement, … [when the] complaint fails at the threshold.").

### III. Conclusion

Because Fortres Grand has failed to plausibly allege confusion, it has failed to state a claim for trademark infringement under 15 U.S.C. §§ 1114, 1125 and Indiana unfair competition law. Accordingly, the district court did not err by granting Warner Bros.' motion to dismiss the complaint.

AFFIRMED.